# EXHIBIT "1"

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.:

HARRY AND JACQUELINE STAMPLER,
HUSBAND AND WIFE,

      PLAINTIFF,

v.

USAA CASUALTY INSURANCE COMPANY,

      DEFENDANT(S),

_____/

## COMPLAINT

     COMES NOW, Harry and Jacqueline Stampler, Husband and Wife, (hereinafter

"PLAINTIFF") and sues USAA Casualty Insurance Company ("DEFENDANT") and says:

**ALLEGATIONS COMMON TO ALL COUNTS AND INCORPORATED THEREIN**

     1.    This is an action for damages in excess of this court's minimum jurisdictional

limits and for Attorneys' fees and costs, and/or for declaratory and other relief.

     2.    PLAINTIFF is a unity, sui generis, whose property is located in Miami-Dade

County, Florida.

     3.    Defendant, USAA Casualty Insurance Company, is a Florida corporation engaged

in the sale and provision of property insurance.  It actively does business in Miami-Dade County,

Florida.  All the employees, servants, adjusters and representatives of defendant were acting

within the scope of agency with their principal, thereby binding the Defendant.

0901119ca00d72d8

USAA Confidential

4.      The causes of action sued upon accrued in Miami-Dade County, Florida as these causes of action involve a purported property insurance contract that involves the parties with respect to a piece of real property located in said county.

5.      All conditions precedent to suit have been complied with, substantially complied with or waived.  Defendant has not suffered any prejudice.

6.      By virtue of the conduct of the Defendant as hereinafter alleged, Plaintiff has been required to retain the services of the undersigned Counsel to represent the insured in this action and is obligated to pay a reasonable fee for such services and is therefore entitled to recover such fees from Defendant pursuant to Florida law.

7.      Similarly, Exhibit A is an All Risk policy. This type of 'insurance' policy is supposed to cover any and all losses which are not specifically excluded or excepted.

8.      Due to the marring exception, most of the 'covered perils' (other ahn losses involving plumbing systems) are not covered at all, in contradiction to the Declaration of Coverage page, and thus the term 'marring' is substantively unfair, rendering the policy illusory and unconscionable. there is no mutuality of obligation because of the 'marring' exception.

9.      The declarations page of Exhibit A and related policy expressly represents the existence and sale of insurance coverage/protection.

10.      Plaintiff suffered a loss on or about 12/31/2017 for damages to the risk property listed on the declarations of coverages page caused by an accidental discharge from a plumbing system within the property in such a fashion as to cause substantial damage to the risk property, the costs to replace or repair the casualty loss being approximately $80,771.64, and pursuant to the rules set forth in the insurance policy writing attached as Exhibit A, timely reported it to Defendant.



0901119ca00d72d8                    USAA Confidential

11.     Defendant assigned claim number 037055848-8 to the unexpected 12/31/2017 loss.

12.     Plaintiff's property suffered a covered loss during the policy period, which Defendant refuses to pay.

13.     Plaintiff is not making any claims for a breach of any implied covenant of good faith or fair dealing, nor does this lawsuit seek any extra-contractual damages at this time.

### COUNT 1
### REFORMATION - ACTION TO DECLARE A TERM IN A CONTRACT A MISTAKE, UNCONSCIONABLE AND /OR TO EXCISE THE TERM 'MARRING' PURSUANT TO F.S. §627.418, AS AN UNFAIR, OVERINCLUSIVE AND OBSCURE TERM USED IN VIOLATION OF F.S. §627.4145, REFORMING THE POLICY ACCORDINGLY

14.     Plaintiff re-alleges and re-avers the Allegations Common to All Counts as though restated fully herein.

15.     The policy (Exhibit A) was issued by or assumed by Defendant and sold and delivered to Plaintiff on the date indicated therein over the risk property identified therein for the term indicated therein.

16.     **Procedural and Substantive Unconscionability:** The policy, if a contract at all, is a contract of adhesion with no ability by the Plaintiff to negotiate the terms. It is procedurally unconscionable. It is substantively unconscionable because an insurance policy that contains an obscure, archaic term ('marring') which is so overbroad and over inclusive so as to render the policy unfair from any objective standpoint. Most of the coverage contemplated by Plaintiff does not exist due to this 'marring' provision. The term must be excised from the policy.

17.     While the declarations page of Exhibit A reads that various 'coverages' existed over the risk (the insured premises) during the term, the 'marring' term contained in the 'wear and


0901119ca00d72d8

USAA Confidential

tear, marring, deterioration' exception eliminates all coverage for losses involving damage, except those pertaining to water damage from plumbing system failures.

18.    'Marring' means damage, so the exception is overbroad and over inclusive, 'gutting' most of the coverages listed in the declaration of coverages page

19.    **Parties' Intent:** Plaintiff intended to buy a policy which covers more than plumbing losses, and defendant intended to sell a policy which covers more than plumbing losses.  The 'marring' exception was intended by the parties to apply only to non-accidental, non plumbing losses. Also, marring is an obscure term that is misleading to laypersons because it is overbroad while most laypersons (including this plaintiff) believed it to be limited to minor damage.

20.    Marring is an obscure term.

21.    **Readable Language Law:** The provision containing this 'marring' exception does not comply with the 'Readable Language' law because the policy does not avoid the use of the obscure term 'marring', thus triggering its invalidity under F.S. §627.418(1).

22.    Defendant's interpretation of the term 'marring' as an exception to coverage does not comply with  F.S. §627.4145 and violates F.S. §627.418. The term 'marring' must therefore be excised.

23.    The policy provision containing this 'marring' provision does not comply with the 'Readable Language' law because the policy does not avoid the use of the obscure term 'marring', thus triggering its invalidity under F.S. §627.418(1).

24.    Defendant's use of the term 'marring' as an exception to coverage does not comply with F.S. §627.4145 and violates F.S. §627.418 and the term 'marring' must therefore be excised.

0901119ca00d72d8

USAA Confidential

25. **Illusory Contract:** The attached policy is illusory because there is no mutuality of obligation. All non plumbing related losses, whether involving water or not, can be denied based upon the 'marring' exception to coverage, regardless of the nature of the policy. Illusory policies cannot be enforced.[1]

26. **Plaintiff's doubt:** Plaintiff is in doubt as to the enforceability of this policy because it is illusory due to a of a lack of mutuality of obligation, because most of what Plaintiff [and defendant] contemplated would be covered, is in fact not covered when the 'marring' exception is taken at face value.

27. **Substance of Dispute/Controversy:** Defendant will not agree to amend the policy to limit the reach of the 'marring' exception to only intentional losses.[2]

28. **Mutual mistake as grounds for reformation.** As both parties intended to sell and buy insurance protection with coverage for substantially more than plumbing losses, the writing is defective because it does not reflect the parties' intent. As a result, the defective policy must be reformed, and the term 'marring' must be limited in application to only intentional losses.[3]

---

[1] "It is basic hornbook law that a contract which is not mutually enforceable is an illusory contract. *Howard Cole & Co. v. Williams,* 157 Fla. 851, 27 So.2d 352 (1946). Where one party retains to itself the option of fulfilling or declining to fulfill its obligations under the contract, there is no valid contract and neither side may be bound. *Miami Coca-Cola Bottling Co. v. Orange-Crush Co.,* 291 F. 102 (D.Fla.1923), *affirmed,* 296 F. 693 (5th Cir.1924)." *Pan-Am Tobacco Corp. v. Dep't of Corr.,* 471 So. 2d 4, 5 (Fla. 1984); "When limitations or exclusions completely contradict the insuring provisions, insurance coverage becomes illusory." *Purrelli v. State Farm Fire & Cas. Co.,* 698 So. 2d 618, 620 (Fla. 2d DCA 1997).

[2] "It is never the role of a trial court to rewrite a contract to make it more reasonable for one of the parties* * * . *Dickerson Florida Inc. v. McPeek,* 651 So.2d 186, 187 (Fla. 4th DCA 1995)". *Barakat v. Broward County Hous. Auth.,* 771 So. 2d 1193, 1195 (Fla. 4th DCA 2000).

[3] *Kolski ex rel. Kolski v. Kolski,* 731 So.2d 169, 173 (Fla. 3d DCA 1999) (Reformation is an equitable remedy which acts to correct an error not in the parties' agreement but in the writing which constitutes the embodiment of that agreement. Thus, where the alleged mistake in the writing is the product of the parties' mutual mistake, or unilateral mistake on the part of one party and inequitable conduct by the other, the writing should be reformed to accurately reflect the parties' agreement.)



0901119ca00d72d8

USAA Confidential

29.     **Need for reformation:**  Reformation of the policy is requested by either excising the offensive term in conformity with F.S. §627.418, or have it excised by the court upon a jury determination of unconscionability, over-inclusiveness, or mutual mistake, or limiting its reach pursuant to a jury determination of the parties' intent on the reach of the marring exception.

30.     **Bona fide, actual, present and practical need for the declaration:** There is a bona fide, actual, present and practical need for a declaration and reformation as Plaintiff cannot enforce an illusory agreement or sue on a breach of an illusory agreement.[4]

31.     **Present, ascertained or ascertainable state of facts, or present controversy as to a state of facts:** Plaintiff's request for this declaration and reformation deals with an ascertainable state of facts.[5] The plain wording of the policy is inconsistent with (1) the parties' intent, and (2) any concept of fairness when the entire policy is read as a whole and given its plain meaning, F.S. § 627.419(1).

32.     **Plaintiff's right is dependent upon facts or law applicable to facts:** Plaintiff's rights to any benefit under this purported insurance contract or right to enforce this purported insurance contract is dependent upon a determination[6] as to the intended reach of the 'marring' exception, or whether the marring exception is so unfair so as to make it substantively unconscionable, and an interrogatory in a verdict form is needed for that jury determination.

---

[4] There are 6 elements to a declaratory judgment action. *See Tavares v. Allstate Insurance Company*, 342 So.2d 551, 553 (Fla. 3d DCA 1977)( "Before any proceeding for declaratory relief should be entertained it should be clearly made to appear that there is 1) a bona fide, actual, present practical need for the declaration, 2) that the declaration should deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts, 3) that some immunity, power, privilege or right of the complaining party is dependant upon the facts or the law applicable to the facts, 4) that there is some person or persons who have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law, 5) that the antagonistic and adverse interest are all before the court by proper process or class representation, and 6) that the relief sought is not merely the giving of legal advice by the courts or the answer to the questions propounded from curiosity".) This allegation is element 1.
[5] This is element 2 of a declaratory relief action. *Id.*
[6] This is element 3 of a declaratory relief action. *Id.*



0901119ca00d72d8

USAA Confidential

33.     **Parties have adverse interests:** The parties have adverse interests both as to reformation and as to the declaration herein sought[7], because the parties cannot agree as to the reach of the 'marring' exception, and leaving it alone renders the policy illusory.  The parties' intent on the reach of the 'marring' exception represents an actual, present, adverse and antagonist interest in the subject matter, in both fact and law[8].

34.     **Proper Parties with antagonistic interests are all before the court:** The proper parties are all before the court by proper process or class representation. [9]

35.     **Not merely seeking advice or satisfying curiosity**: The relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity.[10] Plaintiff has a stake in the outcome of the decision as Plaintiff is unable to enforce the illusory contract as written.

WHEREFORE, Plaintiff prays that:

a.      The jury by interrogatory in the verdict form determine whether the term 'marring' is an obscure term,

b.      If the jury determines the term 'marring' to be obscure, then the court excise the term marring from this policy, as its use in this policy is a violation of F.S. §627.4145, F.S. §627.418, and F.S. §627.411 of the Florida statutes, and

c.      That pursuant to the finding of the jury as to the obscurity of the term 'marring', that  the court further declare the defendant to be liable to Plaintiff for the full amount of insurance stated in the policy pursuant to F.S. §627.418, or

---

[7] This is element 4 of a declaratory relief action. *Id.*
[8] This is element 4 of a declaratory relief action. *Id.*
[9] This is element 5 of a declaratory relief action. *Id.*
[10] This is element 6 of a declaratory relief action. *Id.*



USAA Confidential

0901119ca00d72d8

d.    if the jury does not determine that the term 'marring' is an obscure term then the jury determine by interrogatory in the verdict form whether the term 'marring' is procedurally and substantively unfair as to over inclusiveness so as to be unconscionable; and

e.    the court reform the policy to conform to the jury's determination of the unconscionability of the term marring (if it's unconscionable then it should be excised);

f.    if the jury does not determine that the term 'marring' is obscure or unconscionable, then the jury determine by interrogatory in the verdict form whether the parties intended that the 'marring' exception is meant to be limited to non-accidental losses only; and

g.    the court reform the policy to conform to the jury's determination of the parties' intents and/or the court's declaration;

h.    and that Plaintiff be awarded its attorney's fees and costs.

## COUNT 2
### CONSTITUTIONAL ISSUE- SEPARATION OF POWERS CLAUSE: ACTION SEEKING A DECLARATION THAT A STATUTE IN DEROGATION OF THE COMMON LAW CANNOT BE EXPANDED BY ADDING PROVISIONS FROM ANOTHER STATUTE

36.    Plaintiff re-alleges and re-avers the Allegations Common to All Counts as though restated fully herein.

37.    **Nature of Declaration Sought**: Plaintiff seeks a declaration from this court that it has no jurisdiction to combine the standards and proscriptions in the "Adjuster's Law"[11] with the

---

[11] Insurance Adjusters Law at F.S. §626.877, F.S. §626.878 (Fla. Stat. (2015)); and Fl. Admin. Code §69B-220.201.



0901119ca00d72d8

USAA Confidential

prohibited acts in the "Civil Remedies law"[12] because such is an unauthorized expansion of the Civil Remedy proscriptions.

38.     The specific statutes and regulations involved are the Civil Remedies Statute (F.S. §624.155 - hereafter "Civil Remedies law"), and portions of the Adjusters Law (F.S. §626.877, F.S. §626.878 & Fl. Admin. Code §69B-220.201), and the Separation of Powers clause (Art. II, §3, Fla. Const.)  Plaintiff demands that the court take judicial notice of these laws.

39.     Plaintiff and Defendant entered into an insurance contract (Exhibit A).

40.     Defendant has an obligation to adjust all losses with Plaintiff. (Loss Payment Condition, Exhibit A, Loss payment provision - "We will adjust all losses with you".)

41.     The standards for adjusting losses are codified in Florida's Adjuster's Law; Specifically, the Defendant, through its adjuster/agent is charged with doing a complete investigation strictly in accordance with the contract as part of its adjusting responsibility. (See, e.g. F. S. §626.877, F.S. §626.878, and Fla. Admin. Code §69B-20.201 (3)(d) "An adjuster shall make truthful and unbiased reports of the facts after making a complete investigation").

42.     **Controversy:** Defendant asserts that any claim of any breach of its express duty to adjust losses is only actionable as a Statutory Civil Remedies claim.  Plaintiff disagrees because there is no mention of the Adjusters law in the Civil Remedies statute, and the adjuster's law serves a different Florida public policy than the Civil Remedies Statute.

43.     **Strict construction for the Civil Remedies Law:** The Civil Remedies law is in derogation of the common law, and must be strictly construed.   Its provisions cannot be 'expanded' to include proscriptions not specifically identified in the law itself.  The court cannot rewrite the law.

---

[12] Civil Remedies Law at  F.S. §624.155. (Fla. Stat. (2015)).



0901119ca00d72d8

USAA Confidential

44.   **Exceeding Limits of courts' jurisdiction:** The court has no jurisdiction to expand the Civil Remedies law to include prohibited acts found in the Adjusters Law. The power to amend or write laws is vested solely with the legislature under Florida's Constitutional separation of powers, Art. 2, Section 3.

45.   **Present Conflict:** The insurance company claims it cannot be sued for breach of the covenant to adjust the loss claiming that it is a premature Civil Remedies claim, reasoning that any inquiry as to how a claim is adjusted is a proscribed Civil Remedies act under the Civil Remedies Statute.

46.   Plaintiff submits that breach of contract claims are independent of the Civil Remedies statute, and that a breach of any of the provisions of a contract can serve as the basis for a breach of contract claim. The court cannot ignore the covenants contained in a contract.

47.   The Adjusters Law sets the standards for adjusting claims.

48.   The adjuster's law is not mentioned anywhere in the Civil Remedies law.

49.   **Separation of Powers Prohibition:** The court cannot 'expand' the Civil Remedies law to include proscriptions contained in the Adjusters Laws where the Adjusters Law was not contemplated by the Legislature to be a part of the Statutory Civil Remedies proscriptions.

50.   **Bona fide actual practical need for the declaration:** There is a bona fide, actual, present and practical need for a declaration of rights as Plaintiff is unsure that the defendant can expand the Civil Remedies Law to include proscriptions in the Adjusters Law in light of the separation of powers provision in the Florida Constitution.

51.   **Ascertainable state of facts - Plaintiff's Doubt in this controversy:** Plaintiff's request for the declaration deals with a present state of facts in this controversy; Plaintiff claims



0901119ca00d72d8

USAA Confidential

that defendant has breached an express and statutory duty to adjust the claim and can be sued for

such a breach in a breach of contract action.  Defendant says that it cannot be sued in breach of

contract for any breach of the express duty to adjust. Plaintiff doubts that Defendant can preclude

a breach of contract claim based on the theory that a breach of the duty to adjust is a premature

'Civil Remedies ' claim.  A breach of contract claim is a common law claim that is independent

of any Civil Remedies claim. Plaintiff claims that Defendant's argument violates the Florida

Constitutional separation of powers.

52.     **Plaintiff's right to sue on breach of an express covenant depends on the
resolution:**  Plaintiff's rights under this insurance policy are dependent upon whether it can sue

for breach of an express contractual duty to adjust the loss.  These are the facts and the law

applicable to this case.

53.     **Parties with Actual, present, adverse interests in subject matter exist:** This

claim represents an actual, present, adverse and antagonist interest in the subject matter, in both

fact and law which the Plaintiff has a stake in, and for whom relief is sought.

54.     Parties before the court who have the adverse interests:  The proper parties are all

before the court by proper process whose interests are antagonistic.

55.     **Not just seeking legal advice:** The relief sought is not merely the giving of legal

advice by the courts or the answer to questions propounded from curiosity.  The parties have a

stake in the outcome of the decision.

WHEREFORE, Plaintiff prays for a declaration of its rights which states:

a.   That the Adjuster's Law and standards for adjusting insurance losses are not

proscriptions in the Civil Remedies Statute and that a court is without the

0901119ca00d72d8                    USAA Confidential

jurisdiction to combine the two statutes where the Legislature has not done so;
and

b.   That a common law breach of contract claim is independent of the Civil Remedies statute; and

c.   That Plaintiff be awarded its attorney's fees and costs for seeking this declaration of rights.

**COUNT 3**
**ACTION SEEKING A DECLARATION THAT THE BREACH OF THE LOSS PAYMENT CONDITION'S COVENANT TO ADJUST IS ACTIONABLE AS A BREACH OF CONTRACT CLAIM**

56.      Plaintiff re-alleges and re-avers the allegations common to all counts above as though restated fully herein.

57.      **Nature of Declaration Sought:** Plaintiff seeks a declaration that the non-preemption clause in the Civil Remedies Law (F.S. §624.155(8)) precludes any claim that a common law breach of contract action or statutory declaratory judgment action is preempted by the Civil Remedies Law.

58.      The specific statutory provision involved is sub-paragraph (8) of the Civil Remedies Statute (F.S. §624.155(8) - hereafter "Civil Remedies law"). Plaintiff demands that the court take judicial notice of that law and provision.

59.      Plaintiff and Defendant entered into a contract. (Exhibit A) Defendant has an obligation to adjust all losses with Plaintiff. (Loss Payment Condition, Exhibit A, Loss payment provision - "We will adjust all losses with you".)

60.      Defendant is charged with doing a complete investigation strictly in accordance with the contract as part of its adjusting responsibility. (See, e.g. F. S. §626.877, F.S. §626.878,



Page **12**
*Harry and Jacqueline Stampler's Complaint*

USAA Confidential

and Fla. Admin. Code §69B-20.201 (3)(d) "An adjuster shall make truthful and unbiased reports of the facts after making a complete investigation").

61.     **Controversy:** Defendant asserts that any common law breach of contract claim relating to its express duty to adjust losses is only actionable as a Statutory Civil Remedies claim under the Civil Remedies law - a 'Civil Remedies ' claim.

62.     Plaintiff disagrees because there is a specific provision in the Civil Remedies Law which states that the Civil Remedies law does not preempt common law actions or statutory cause of actions.  Specifically, F.S. §624.155(8) permits statutory declaratory judgment actions and common law breach of contract actions which are not preempted by the Civil Remedies law.

63.     **Strict construction for the Civil Remedies  Law:** The Civil Remedies  law is in derogation of the common law, and must be strictly construed.

64.     **Exceeding Limits of courts' jurisdiction:** The court has no jurisdiction to change the non-preemption language of  F.S. §624.155(8).  The power to amend or write laws is vested solely with the legislature under Florida's Constitutional separation of powers, Art. 2, Section 3.

65.     The court cannot ignore the plain wording of a statute such as the nonpreemptive provision of F.S. §624.155(8)[13].

66.     **Present Conflict:** The insurance company claims it cannot be sued for breach of the express contractual  covenant to adjust the loss claiming that Plaintiff's Breach of Contract claim it is a premature 'disguised' Civil Remedies  claim.  Plaintiff disagrees because a breach of

---

[13] "(8) The civil remedy specified in this section does not preempt any other remedy or cause of action provided for pursuant to any other statute or pursuant to the common law of this state. . . .



0901119ca00d72d8

USAA Confidential

contract claim independent from a Civil Remedies claim cannot be 'preempted' by the Civil Remedies statute by the plain wording of the statute.

67.    **Statutory Construction:** The court cannot ignore the nonpreemption language of F.S. §624.155(8) which specifically states that declaratory judgment claims and common law breach of contract claims are not preempted by the Statutory Civil Remedies Law.

68.    **Bona fide actual practical need for the declaration:**  There is a bona fide, actual, present and practical need for a declaration of rights as Plaintiff is unsure that the defendant can interpret F.S. §624.155(8) to eliminate the non preemption language which permits common law causes of action and statutory causes of action.

69.    **Ascertainable state of facts - Plaintiff's Doubt in this controversy:**  Plaintiff's request for the declaration deals with a present state of facts in this controversy; Plaintiff claims that defendant has breached an express and statutory duty to adjust the claim and can be sued for such a breach in a breach of contract action.  Defendant says that it cannot be sued in breach of contract for any breach of the express duty to adjust because such claims are preempted by the Civil Remedies law. Plaintiff doubts that Defendant can preclude a breach of contract claim based on the breach of the duty to adjust by claiming that it is a premature 'Civil Remedies ' claim.

70.    Plaintiff's right to enforce an express covenant depends on the resolution: Plaintiff's rights under this insurance policy are dependent upon whether it can sue for breach of an express contractual duty to adjust the loss, or the duty to pay initially at least the actual cash value of a loss.  These are the facts and the law  applicable to this case.

0901119ca00d72d8

USAA Confidential

71.    **Parties with Actual, present, adverse interests in subject matter exist:** This claim represents an actual, present, adverse and antagonist interest in the subject matter, in both fact and law which the Plaintiff has a stake in, and for whom relief is sought.

72.    **Parties before the court who have the adverse interests:**  The proper parties are all before the court by proper process whose interests are antagonistic.

73.    **Not just legal advice:** The relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity.  The parties have a stake in the outcome of the decision as it involves interpretation of a statutory provision.

WHEREFORE, Plaintiff prays for a declaration of its rights which states:

a.    That a common law breach of contract claim based upon a claimed breach of the express contractual duty to adjust is independent from and is NOT preempted by - and is NOT a claim under the Civil Remedies law's plain wording and that a declaratory judgment claim such as this one is likewise independent of and is not preempted by the Civil Remedies law.

b.    That Plaintiff be awarded its attorney's fees and costs for seeking this declaration of rights.

## COUNT 4
### ACTION SEEKING A DECLARATION THAT THE INSURER'S DUTY TO ADJUST MUST MEET THE STATUTORY STANDARDS IN THE ADJUSTER LAW

74.    Plaintiff  re-alleges and re-avers the allegations common to all counts above as though restated fully herein.

75.    Plaintiff and Defendant entered into a contract which provided insurance over the Plaintiff's property. Defendant agreed to provide such coverages - on the date or dates of processing indicated on the Declaration of Coverages page. (Exhibit A).



0901119ca00d72d8

USAA Confidential

76.     Plaintiff seeks a declaration from this court that Defendant's duty to adjust a claim must meet the standards set by law.  The specific statutes and regulations involved are contained in F.S. §626.877, F.S. §626.878, and Fl. Admin. Code §69B-220.201 (hereafter "Adjuster's Law") which the Plaintiff demands that the court take judicial notice of.

77.     Defendant has a duty to adjust all losses as stated in the Loss Payment condition of Exhibit A.

78.     However, the contract is silent on what standard, if any, the defendant must follow when 'adjusting' the claim. Standards exist in the law and regulations at F.S. §626.877, F.S. §626.878 (Fla. Stat. (2015)) and Fla. Adm. Code §69B-220.201, the Adjuster's Law.

79.     Plaintiff is in doubt as to its right to demand that the adjustment meet the standards set by the Adjuster's Law when the contract is silent on this point.

80.     There is a bona fide, actual, present and practical need for a declaration of rights as the duty to adjust is otherwise illusory without standards, and the standards set by law are irrelevant if they do not apply to the obligation to adjust as contained in this contract.

81.     Plaintiff submits that Defendant must meet the minimum legal standards for adjusting claims contained in the Adjuster's Law in satisfying its obligation and duty to adjust.

82.     Plaintiff's request for the declaration deals with a present, ascertained or ascertainable state of facts  in this present controversy as construction and interpretation of a contract, and determination of the standard for the duty to adjust should be governed by the contract in *pari materia* with the Adjuster's Law.  Otherwise, the determination of actual cash value is completely one-sided and illusory.

83.     Plaintiff's rights to enforcement of the  adjustment duty in the Loss Payment provision of the policy on this claim by law is dependent upon the facts and the law of  statutory



USAA Confidential

0901119ca00d72d8

and contractual construction applicable to the facts. The court is vested with the jurisdiction to construe contracts and the effect of statutory provisions related thereto.

84.    The issue of Defendant's performance of its duty to adjust the loss without reference to or without meeting the minimum standards imposed by the Adjuster's Law represents an actual, present, adverse and antagonist interest in the subject matter, in both fact and law.

85.    The parties have adverse interests.  Defendant claims that the standards for adjusting claims in the Adjuster's Law is irrelevant to its duty to adjust. Such a position improperly nullifies the Adjuster's Law. Thus, Plaintiff believes otherwise.

86.    The proper parties are all before the court by proper process and the relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity.  The parties have a stake in the outcome of the decision.

WHEREFORE, Plaintiff prays for a declaration of its rights which states:

a.    that the statutory standards in the Adjuster's Law govern Defendant's duty to adjust the loss; and

b.    That Plaintiff be awarded its attorney's fees and costs for seeking this declaration of rights.

### COUNT 5
### ACTION SEEKING A DECLARATION THAT SATISFACTION  OF THE LOSS PAYMENT CONDITION'S COVENANT TO ADJUST CANNOT BE PRESUMED WHEN CHALLENGED IN A BREACH OF CONTRACT CLAIM

87.    Plaintiff  re-alleges and re-avers the allegations common to all counts above as though restated fully herein.

BLO

Page **17**
*Harry and Jacqueline Stampler's Complaint*

USAA Confidential

88.     **Nature of controversy:** Plaintiff seeks a declaration from this court that satisfaction of the contractual duty to adjust a loss, owed by an insurance company to its insured, cannot be presumed.

89.     Plaintiff and Defendant entered into a contract which provided insurance over the Plaintiff's property.  Defendant agreed to provide such coverages - on the date or dates of processing indicated on the Declaration of Coverages page. (Exhibit A).  One of the covenants in the policy is Defendant's promise 'to adjust all losses' that occur during the policy period. Plaintiff believes, inter alia, that this provision was breached by Defendant, but not in Civil Remedies.

90.     If an insured is precluded from making an inquiry as to whether the defendant properly satisfied the express contractual duty to adjust, the contractual duty to adjust is meaningless, and satisfaction of the duty is presumed.

91.     Defendant maintains that it cannot be challenged on a failure of its duty to adjust as premature 'civil remedies' claims; Defendant claims it cannot be sued in breach of contract for violating the contractual provision which establishes whether a correct coverage decision was made or a correct valuation of the loss was made.  Defendant's argument creates a legal presumption where none exists.

92.     Plaintiff maintains that a breach of the adjustment covenant can be actionable just like any other contractual provision, so long as there is a nexus to damages resulting from such a breach.  Since the coverage and payment decisions are dependent upon the adjustment of the claim, Defendant has created a little 'catch-22' paradox.

93.     There is no presumption in the law that the duty to adjust is satisfied by an insurance company's *ipse dixit* payment decision.



Page **18**
*Harry and Jacqueline Stampler's Complaint*

USAA Confidential

0901119ca00d72d8

94.     **Plaintiff's Doubt:** Plaintiff is in doubt as to whether the defendant can be sued for defendant's failure to satisfy the Loss Payment condition's duty to adjust in a breach of contract action due to Defendant's claim that such issues can only be addressed in a Civil Remedies claim. Furthermore, Plaintiff doubts that satisfaction of the duty to adjust can be presumed in the face of a breach of contract action.

95.     **Controversy:** Defendant claims that satisfaction and performance of the Loss Payment condition's duty to adjust is presumed for purposes of any breach of contract claim, and is not actionable. Plaintiff disagrees.

96.     **Bona fide actual practical need for the declaration:** There is a bona fide, actual, present and practical need for a declaration of rights as Plaintiff is unsure whether satisfaction of Defendant's duty to adjust is presumed. This puts Plaintiff in doubt as to whether compliance can be demanded, or whether the duty to adjust all losses is simply superfluous.

97.     **The requested declaration deals with present controversy as to a state of facts and applicable law:** Plaintiff's request for the declaration deals with a present, ascertained or ascertainable state of facts in this present controversy as construction of the contract, and determination of whether the loss payment condition's duty to adjust the loss is an actionable provision in a breach of contract claim, is unsettled in this policy due to the position taken by Defendant.

98.     **Plaintiff's rights to enforce an express contractual provision are dependent upon the law applicable to facts:** Plaintiff's rights to enforce a contract in general and specifically Plaintiff's right to enforce an express covenant to adjust a loss in a contract, are at stake, and are dependent upon the facts and the law of contractual construction applicable to the



Page **19**
*Harry and Jacqueline Stampler's Complaint*

USAA Confidential

0901119ca00d72d8

express contractual provisions in Exhibit A in relation to the Adjusters Law and the Civil Remedies  Statute, and Florida's constitution, and the law of presumptions.

99.     **Plaintiff has a present, adverse, and antagonistic interest in subject matter:** Plaintiff's rights under this insurance policy are actual, adverse and antagonistic to the defendant's interest.  Absent a determination of this issue, the loss payment condition's covenant to adjust the loss is superfluous, rendering the duty to adjust unenforceable, and illusory. The court is vested with jurisdiction to construe contracts and make declaratory judgments under F.S. §86.011 so as to give full force and effect to all provisions in a contract so that they harmonize with one another. City of Homestead v. Johnson, 760 So.2d 80, 84 (Fla. 2000).

100.     **The proper parties are all before the court by proper process and the parties have adverse interests.** Plaintiff submits that coverage determinations must be made after an 'adjustment' which meets objective standards. Defendant disagrees.

101.     **Relief sought is not a mere seeking of legal advice:**  The relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity. The parties have a stake in the outcome of the decision.

WHEREFORE, Plaintiff prays for a declaration of its rights which states:

a.     That  a payment of a claim by a defendant does not create a presumption of performance or satisfaction of the adjusting duty; and

b.     That Plaintiff be awarded its attorney's fees and costs for seeking this declaration of rights.

0901119ca00d72d8

USAA Confidential

## COUNT 6
## BREACH OF CONTRACT WITH THE DATE OF LOSS OF 12/31/2017

102.   Alternatively, if there is a contract, Plaintiff re-alleges and re-avers the allegations common to all counts above as though restated fully herein.

103.   **Contract:** Plaintiff and Defendant entered into a contract which provided insurance over the Plaintiff's property per exhibit A.

104.   **Loss during policy period**: Plaintiff incurred the loss on or about 12/31/2017 during the term of the policy and suffered damages as stated above for said loss, and timely reported the same.

105.   **Breach:** Defendant breached the contract as stated above, including but not limited to the Loss Payment and Loss Settlement conditions of the contract resulting in Defendant's failure to pay sufficient funds to Plaintiff to restore the risk property to its pre-loss condition.

106.   **Materiality:** Defendant's breach was material.

107.   **Resulting damages:** The breach of contract by Defendant directly resulted in damages to the Plaintiff in at least the amount in controversy alleged above due to Plaintiff.

WHEREFORE, Plaintiff demands judgment for damages in the above amounts, or as the proofs may show against Defendant, together with Attorneys fees and costs, and prejudgment interest, pursuant to Statute, and such other relief as this Court deems meet and proper or equitable.

USAA Confidential

0901119ca00d72d8

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury for all triable issues.

Respectfully Submitted,

**BARNARD LAW OFFICES, L. P.**
9655 South Dixie Highway, Suite 200
Miami, FL 33156
Telephone: (305) 665-0000
Facsimile: (305) 669-9666
E-Mail: <u>ESERVICE@BarnardLawOffices.com</u>

By: <u>/s/ Andrew C. Barnard, Esq.</u>
**ANDREW C. BARNARD, ESQ.**
**FLORIDA BAR NO.: 281697**



Page **22**
*Harry and Jacqueline Stampler's Complaint*

USAA Confidential

# EXHIBIT A

0901119ca00d72d8

STATE OF TEXAS

Before me, the undersigned notary public for the State of Texas, on this day personally appeared Mary Ann Rice, Manager Operations Support and custodian of records of USAA Casualty Insurance Company, and after being by me duly sworn and upon her oath says that an exact duplicate of the USAA Casualty Insurance Company, 03705 58 48 90A, including any applicable endorsements and forms, issued to HARRY STAMPLER AND JACQUELINE STAMPLER, effective on January 1, 2018, has been prepared under her direction and is attached hereto.

_Mary Ann Rice_

Mary Ann Rice,
Manager Operations Support

Subscribed and sworn to before me by said Mary Ann Rice, Manager Operations Support, this _16_ day of April, 2018 at San Antonio, Texas, to certify which witness my hand and seal at office.



Angela Kaye Catherman
Notary Public
State of Texas
My commission expires on September 12, 2019

ANGELA KAYE CATHERMAN
Notary ID # 128738348
My Commission Expires
September 12, 2019

0901119ca00d72d8

USAA Confidential

# HOMEOWNERS POLICY PACKET

EFFECTIVE: 10-21-17 TO: 10-21-18

HARRY STAMPLER
2400 TEQUESTA LN
MIAMI FL 33133-3176

CIC      03705 58 48      90A

## IMPORTANT MESSAGES

Refer to your Declarations Page and endorsements to verify that coverages, limits, deductibles and other policy details are correct and meet your insurance needs. Required information forms are also enclosed for your review.

1) NOTICE OF CHANGE IN POLICY TERMS
   We've revised your homeowners policy. Please read the enclosed NOTICE OF CHANGE IN POLICY TERMS flier for details on enhanced coverages and reductions in coverage. We recommend you also review your Declarations Page which lists your policy's coverages, deductibles and premium.

2) USAA considers many factors when determining your premium. Maintaining your property to reduce the probability of loss is one of the most important steps you can take toward reducing premium increases. A history of claim activity will affect your policy premium.

3) Go to usaa.com to view policy coverages and home features.

4) Your Homeowners Policy excludes coverage for windstorm, hurricane and hail. Coverage is available through the Citizens Property Insurance Corporation (Citizens). If you do not currently have a Citizens Policy, and are interested in obtaining one, call us at 1-800-531-USAA (8722).

## 5) IN RESPONSE TO FLORIDA LEGISLATION SB1486, LAW AND ORDINANCE COVERAGE IS AN IMPORTANT COVERAGE THAT YOU MAY WISH TO PURCHASE. YOU MAY ALSO NEED TO CONSIDER THE PURCHASE OF FLOOD INSURANCE FROM THE NATIONAL FLOOD INSURANCE PROGRAM. WITHOUT THIS COVERAGE,

(CONTINUED ON NEXT PAGE)

This is not a bill. Any premium charge or return for this policy will be reflected on your next regular monthly statement.
**To receive this document and others electronically or view your policy summary online, go to usaa.com.**
For U.S. Calls: Policy Service (800) 531-8111. Claims (800) 531-8222.
HOCS1                                                                49709-0406

USAA Confidential

THIS PAGE INTENTIONALLY LEFT BLANK

0901119ca00d72d8

USAA Confidential

## HOMEOWNERS POLICY PACKET CONTINUED

# YOU MAY HAVE UNCOVERED LOSSES.  PLEASE DISCUSS THESE COVERAGES WITH YOUR INSURANCE AGENT.

6) Your policy does NOT cover loss due to flood from any source. For information about obtaining flood coverage from the National Flood Insurance Program (NFIP), call USAA at (800) 531-8722, or contact the NFIP directly.

If you already have a flood policy, you should review it to make sure you have the appropriate coverage and limits. No automatic increases or adjustments are applied to your policy. Coverage for loss of household contents due to flood may be available at an additional cost. If you have questions, please call a member service representative at the phone number above.

**7) YOUR POLICY PROVIDES COVERAGE FOR A CATASTROPHIC GROUND COVER COLLAPSE THAT RESULTS IN THE PROPERTY BEING CONDEMNED AND UNINHABITABLE. OTHERWISE, YOUR POLICY DOES NOT PROVIDE COVERAGE FOR SINKHOLE LOSSES. YOU MAY PURCHASE ADDITIONAL COVERAGE FOR SINKHOLE LOSSES FOR AN ADDITIONAL PREMIUM.**

8) Florida law allows you to make changes to your policy coverages and select new payment options. Please review the enclosed "Florida Coverage Options" information sheet for details.

0901119ca00d72d8                    USAA Confidential

CIC    03705 58 48    90A

# NOTICE OF CHANGE IN POLICY TERMS

## FLORIDA

We are making changes to your Homeowners policy as part of a change affecting all Homeowners policies in Florida insured through the USAA Group of companies. **Many of the changes are intended as a clarification to your current policy. However there are several changes we would like to bring to your attention.** These are provided in the table below. These changes will apply upon the effective date of the endorsed policy.

Descriptions in the table below are necessarily brief. You should review the endorsed policy for the exact terms and conditions. If you want to accept this new policy, no action is required on your part other than the payment of premiums. If you have questions, call a member service representative at 800-531-USAA (8722) or via our mobile shortcut #8722.

The table below illustrates the changes we have made to your Homeowners policy. Some of these changes may not apply to your policy if you have not purchased additional coverage.

| Changes to Your Homeowners Policy | | | |
|---|---|---|---|
| **Coverage** | **Prior Policy** | **New Policy** | **Notes** |
| Constant or continual Seepage or Leakage. | If greater than 13 days coverage is excluded. | If greater than 13 days, coverage applies if the leak and damage is unknown to all insureds. | Applies to the basic policy, Special Personal Property Coverage and to Unit Owners Coverage A Special Coverage. |
| Insured location definition | Does not include newly acquired location | Newly acquired location is included as an insured location. | To properly protect your new location speak to a customer service representative as quickly as possible. |
| Loss Assessments | Limit of $25,000 provided in the policy | Limit of $50,000 provided in the policy. | |
| Notice of Cancellation or Nonrenewal mailing requirement. | Various requirements based on the type of notice and the time of year of the notice up to 180 days. | Standardized requirement for notices when the policy has been in force for 90 days or more to 120 days. | Please see your policy for specifics. |
| Sinkhole Loss Coverage | No reimbursement for making a sinkhole claim without good faith grounds. | Reimbursement requirement for costs and expenses associated with filing a sinkhole claim without good faith grounds. | |

CATALOG-NUMBER
131401-0916
Page 1 of 1

FLPRGHFLR (09-16)

0901119ca00d72d8

USAA Confidential

**USAA CASUALTY INSURANCE COMPANY**
**9800 Fredericksburg Road - San Antonio, Texas 78288**
RENEWAL DECLARATIONS PAGE

| Named Insured and Residence Premises | Policy Number |
|---|---|

HARRY STAMPLER AND JACQUELINE STAMPLER          CIC   03705 58 48   90A

2400 TEQUESTA LN
MIAMI, MIAMI-DADE, FL  33133-3176

Policy Period From: 10/21/17    To: 10/21/18
(12:01 A.M. standard time at location of the residence premises)

**SECTION I - COVERAGES AND AMOUNTS OF INSURANCE**

| | |
|---|---|
| COVERAGE A - DWELLING PROTECTION | $255,000 |
| COVERAGE B - OTHER STRUCTURES PROTECTION | $25,500 |
| COVERAGE C - PERSONAL PROPERTY PROTECTION | $127,500 |
| COVERAGE D - LOSS OF USE PROTECTION  (UP TO 24 MONTHS) | $51,000 |

**SECTION II - COVERAGES AND LIMITS OF LIABILITY**

| | |
|---|---|
| Personal Liability – Each Occurrence | $300,000 |
| Medical Payments to Others | $5,000 |

**DEDUCTIBLES**   (Applies to SECTION I Coverages ONLY)
We cover only that part of the loss over the deductible stated.

| | |
|---|---|
| HURRICANE | **NOT COVERED** |
| ALL OTHER PERILS | $1,000 |

| | |
|---|---|
| **POLICY PREMIUM** for Section I and Section II Coverages Above | $14,378.52 |
| **CREDITS AND DISCOUNTS** (Included in policy premium above.) Details on the following page. (If applicable) | $354.61 CR |
| **OTHER COVERAGES AND ENDORSEMENTS** Form and Endorsements are printed on the following page. | $12,232.35 CR |
| **STATE SURCHARGES AND TAXES** FL SURCHARGES ARE PRINTED ON THE FOLLOWING PAGE. | $2.00 |

**PREMIUM SUMMARY**

| | |
|---|---|
| NON-HURRICANE PREMIUM | $2,146.17 |
| HURRICANE PREMIUM | NO COVERAGE |

**TOTAL POLICY PREMIUM INCLUDING SURCHARGES**
Including Credits, Discounts, Optional Coverages, Endorsements, State Surcharges and Taxes

$2,148.17

PREMIUM DUE AT INCEPTION. THIS IS NOT A BILL. STATEMENT TO FOLLOW.

**FIRST MORTGAGEE:**
NATIONSTAR MORTGAGE, LLC                     LOAN NR     0402560932
ITS SUCCESSORS AND/OR ASSIGNS
PO BOX 7729
SPRINGFIELD, OH 45501-7729

COUNTERSIGNED BY AGENT
In Witness Whereof, this policy is signed on 08/21/17

**Deneen Donnley,** Secretary   **S. Wayne Peacock,** President
REFER TO YOUR POLICY FOR OTHER COVERAGES, LIMITS AND EXCLUSIONS.
ATTACH THIS DECLARATION TO PREVIOUS POLICY

HOFL-D1(09-16) Rev. 09-16                     CATALOG-NUMBER 93722-1016__01

0901119ca00d72d8                     USAA Confidential



USAA CASUALTY INSURANCE COMPANY
RENEWAL DECLARATIONS PAGE

**Policy Number**          **Policy Term:**   10/21/17        10/21/18
CIC    03705 58 48    90A                      Inception      Expiration

## POLICY AND ENDORSEMENTS THAT ARE PART OF YOUR CONTRACT WITH US.

POLICY AND ENDORSEMENTS THAT ARE PART OF YOUR CONTRACT WITH US.

REMAIN IN EFFECT (Refer to prior Policy Packet(s) for documents not attached.):
```
        QR3CIC      (07-08) QUICK REFERENCE-SPECIAL FORM
ADDED:
        HO-3RFL     (09-16) HOMEOWNERS SPECIAL FORM
        HO-FL       (08-16) FLORIDA SPECIAL PROVISIONS
        HO-SLS3FL   (05-16) SPECIAL LOSS SETTLEMENT
        HO-CGCC     (08-16) CATASTROPHIC GROUND COVER COLLAPSE
        HO-125FL    (09-16) HOME PROTECTOR
        HO-208FL    (12-15) WATER BACKUP OR SUMP PUMP OVERFLOW
        HO-225FL    (12-15) BUILDING ORDINANCE OR LAW COVERAGE (25%)
        HO-728FL    (05-16) REPLACEMENT COST COVERAGE
        HO-94FL     (09-16) WINDSTORM OR HAIL EXCLUSION          $12,232.35 CR
```

YOUR PREMIUM HAS BEEN REDUCED BY THE FOLLOWING CREDITS AND DISCOUNTS:

```
    AUTO AND HOME COMBINATION DISCOUNT           $52.24 CR
    CLAIMS FREE DISCOUNT                        $284.41 CR
    PROTECTIVE DEVICE CREDIT                     $17.96 CR
```

SPECIFICALLY LISTED BELOW ARE SURCHARGES.

```
    EMERGENCY MANAGEMENT FUND                                    $2.00
```

CATALOG-NUMBER

**HOFL-D2 (09-16)**                08/21/17

131567-0916

USAA Confidential

0901119ca00d72d8



CIC    03705 58 48    90A

Homeowners 3R(FL)
Special Form
(09-16)
HO 2008 Program

---

# AGREEMENT

---

In return for payment of premium and subject to all terms of this policy, we will provide the insurance described.

---

# DEFINITIONS

---

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse when a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance. Certain words and phrases are defined and are printed in boldface and quotation marks when used.

1. **"Actual cash value"** is calculated as the amount it would cost to repair or replace covered property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. **"Actual cash value"** applies to valuation of covered property regardless of whether that property has sustained partial loss, or total loss. The **"actual cash value"** of lost or damaged property may be significantly less than its replacement cost.

2. **"Aircraft"** means any conveyance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

3. **"Bodily injury"** means physical injury, sickness or disease, including required care, loss of services and death that results.

   **"Bodily injury"** does not include mental injuries such as: emotional distress, mental anguish, humiliation, mental distress, or any similar injury unless it arises out of physical injury to the person claiming a mental injury.

4. **"Business"** means any full or part-time activity arising out of or related to any trade, profession or occupation of any **"insured"**.

5. **"Collapse"** means:

   a. A sudden falling or caving in;

   b. A sudden breaking apart or deformation such that the building or part of a building is in imminent peril of falling or caving in and is not fit for its intended use.

   Damage consisting solely of settling, cracking, shrinking, bulging or expansion is not covered unless it is the direct result of **"collapse"**.

6. **"Damages"** means compensatory damages the **"insured"** is legally obligated to pay as a result of **"bodily injury"** or **"property damage"** covered by this insurance, but does not include punitive, exemplary or multiple damages.

7. **"Fungus"** means any microorganism or by-product of any microorganism, including, but not limited to mold, mildew, fungi, mycotoxins and spores.

8. **"Hovercraft"** means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles.

CATALOG-NUMBER
131396-1016
Page 1 of 34

HO-3RFL (09-16)

USAA Confidential

CIC    03705 58 48    90A

9. **"Insured"** means:

a. The **"member"**;

b. Spouse when a resident of the same household; and

c. Residents of your household who are:

   (1) Your relatives; or

   (2) Other persons under the age of 21 and in the care of any person named above.

Under SECTION II, **"insured"** also means:

d. With respect to animals, **"watercraft"** or **"personal watercraft"** to which this policy applies, any person or organization legally responsible for these animals, **"watercraft"** or **"personal watercraft"** which are owned by you or any person included in 9.a., 9.b., or 9.c. above. A person or organization using or having custody of these animals, **"watercraft"** or **"personal watercraft"** without consent of the owner is not an **"insured"**.

e. With respect to any vehicle or conveyance to which this policy applies:

   (1) **"Residence Employees"** while engaged in your employ or that of any person included in 9.a., 9.b. or 9.c. above; or

   (2) Other persons using the vehicle on an "insured location" with your consent.

10. **"Insured location"** means:

a. The **"residence premises"**;

b. Any premises used by you in connection with 10.a. above;

c. Any part of a premises:

   (1) Not owned by any **"insured"**; and

(2) Where any **"insured"** is temporarily residing;

d. Vacant land, other than farm land owned by or rented to any **"insured"**;

e. Land owned by or rented to any **"insured"** on which a one or two family dwelling is being built as a residence for any **"insured"**;

f. Individual or family cemetery plots or burial vaults of any **"insured"**; or

g. Any part of a premises occasionally rented to an **"insured"** for other than **"business"** use.

11. **"Member"** means the owner of the policy who is the person who meets all eligibility requirements for membership and whose membership number is shown in the Declarations of this policy.

12. **"Motor vehicle(s)"** means any type of motorized land vehicle or conveyance, whether or not subject to motor vehicle registration.

13. **"Named peril(s)"** means one or more of the perils listed under LOSSES WE COVER – PERSONAL PROPERTY PROTECTION.

14. **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

a. **"Bodily injury"**; or

b. **"Property damage"**.

15. **"Personal watercraft"** means a conveyance, used or designed to be used on water that uses a jet pump powered by an internal combustion engine as the primary source of propulsion.

16. **"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids,

**HO-3RFL (09–16)**

0901119ca00d72d8

USAA Confidential

CIC    03705 58 48    90A

alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

17. **"Professional services"** means any type of service to the public that requires members rendering a service to obtain an advanced degree and/or obtain a license or other legal authorization to provide the service and includes, but is not limited to services rendered by dentists, naturopaths, chiropractors, physicians and surgeons, doctors of dentistry, physical therapists, occupational therapists, podiatrists, optometrists, nurses, nurse–midwives, veterinarians, pharmacists, architects, landscape architects, engineers, accountants, land surveyors, psychologists, attorneys–at–law, therapists, counselors and social workers.

18. **"Property damage"** means physical damage to or destruction of tangible property, including loss of use of this property.

19. **"Residence employee"** means an employee of any **"insured"** whose primary duties are related to the maintenance or use of the **"residence premises"**, including household or domestic service.

20. **"Residence premises"** means:

a. The one family dwelling, other structures, and grounds; or

b. That part of any other building;

Where you reside and which is shown as the **"residence premises"** in the Declarations.

**"Residence premises"** also means a two family dwelling where you reside in at least one of the family units and which is shown as the **"residence premises"** in the Declarations.

21. **"Sudden and accidental"** means an abrupt, fortuitous event which is unintended from the perspective of a reasonable person.

22. **"War"** means war whether declared or undeclared; civil war; insurrection; rebellion; revolution; any warlike act by friendly or enemy forces, destruction or seizure for a military purpose.

23. **"Watercraft"** means a conveyance principally designed to be propelled on or in water by wind, current, paddles, oars, engine power or electric motor.

## DEDUCTIBLE

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the applicable amount of insurance that applies, we will pay only that part of the total of all loss payable under SECTION I – PROPERTY WE COVER that exceeds the deductible amount shown in the Declarations.

## SECTION I PROPERTY WE COVER

**COVERAGE A - Dwelling Protection**

We cover:

1. The dwelling on the **"residence premises"** shown in the Declarations, including structures attached to the dwelling;

2. Materials and supplies located on or next to the **"residence premises"** used to construct, alter or repair the dwelling or other structures on the **"residence premises"**; and

HO-3RFL (09–16)

0901119ca00d72d8

USAA Confidential

CIC     03705 58 48     90A

3. Custom or permanently installed window treatments and permanently installed carpeting.

Except as specifically provided in SECTION I – ADDITIONAL COVERAGES, Land, we do not cover land, including land on which the dwelling is located.

## COVERAGE B - Other Structures Protection

We cover:

1. Other structures on the **"residence premises"**:

   a. We cover other structures on the **"residence premises"**:

      (1) Set apart from the dwelling by clear space; and

      (2) Sidewalks, driveways and fences; and

      (3) Structures connected to the dwelling by only a fence, utility line, or similar connection.

   b. We do not cover:

      (1) Land, except as specifically provided in SECTION I – ADDITIONAL COVERAGES, Land, including land on which the other structures are located;

      (2) Structures used in whole or part for **"business"** unless such use consists solely of use of office space for paperwork, computer work or use of a telephone, and consists solely of activities that are:

         (a) Duties of any **"insured's"** employment by another; and

         (b) Performed solely by an **"insured"**.

2. Other Structures away from the **"residence premises"**.

   a. We cover other structures owned by you and located away from the **"residence premises"**, if used by you in connection with the **"residence premises"**.

   b. We do not cover:

      (1) Other structures located away from the **"residence premises"**:

         (a) Being used as a dwelling; or

         (b) Capable of being used as a dwelling; or

         (c) Used in whole or part for **"business"**; or

      (2) Land, including land on which the other structure is located.

The amount of insurance for all structures will not be more than the amount of insurance shown in the Declarations for Other Structures Protection.

## COVERAGE C - Personal Property Protection

We cover:

Tangible personal property owned or used by any **"insured"** while it is anywhere in the world. After a loss and at your request, we will cover the loss of personal property owned by:

1. Others while the property is on the part of the **"residence premises"** occupied by any **"insured"**;

2. A guest or a **"residence employee"**, while the property is in any residence occupied by any **"insured"**.

The amount of insurance for personal property usually located at any **"insured's"** residence, other than the **"residence premises"** is limited to 10% of the amount of insurance for Personal Property Protection, or $1,000, whichever is greater.

USAA Confidential

0901119ca00d72d8

Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

**Special Amounts of Insurance.** The special amounts set out below do not increase the Personal Property Protection amount of insurance. The special amount for each numbered category below is the total amount for each loss for all property in that category.

1. $200 for money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards, smart cards and gift certificates including electronic gift certificates.

2. $1,000 for securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, and tickets.

   This limit includes the cost to research, replace or restore the information from the lost or damaged material.

   This limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

3. $1,500 for **"watercraft"** or **"personal watercraft"**, including their trailers, furnishings, equipment and outboard motors.

4. $1,500 for trailers not used with **"watercraft"** or **"personal watercraft"**.

5. $10,000 for loss by theft of jewelry, watches, precious and semi–precious stones, fur garments, including any garment containing fur, which represents its principal value.

6. $2,500 on stamps, trading cards and comic books, including any of these that are part of a collection.

7. $10,000 for loss by theft of firearms.

8. $10,000 for loss by theft of silverware, silver–platedware, goldware, gold–plated ware, platinumware, platinum–plated ware and pewterware. This category includes but is not limited to flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

9. (a) $10,000 for tangible **"business"** property at your residence.

   (b) $1,000 for tangible **"business"** property away from your residence.

10. $3,000 on motorized golf carts and their equipment and accessories. But if, at the time of loss, there is any other insurance covering physical loss to golf carts, then this policy does not apply.

11. $3,000 for motorized vehicles designed or modified to operate at speeds not to exceed 15 miles per hour and for use off public roads. However, this limit does not apply to vehicles not subject to motor vehicle registration which are:

   a. Used to service any **"insured's"** residence, or

   b. Designed for assisting the handicapped.

**Property We Do Not Cover.**

1. Personal property separately described and specifically insured in this or other insurance.

2. Animals, birds or fish.

3. **"Motor vehicle(s)"**. This includes but is not limited to:

   a. Equipment, accessories, and parts;

   b. Any device or instrument for the transmitting, recording, receiving or reproduction of data, sound or pictures which is permanently installed in a

HO-3RFL (09–16)                                    Page 5 of 34

0901119ca00d72d8

USAA Confidential

"motor vehicle". We do not cover antennas, tapes, wires, discs or other media, for use with any such device or instrument, while in or upon the "motor vehicle".

We do cover "motor vehicle(s)" or all other motorized land conveyances not subject to motor vehicle registration which are:

a. Used to service any "insured's" residence; or

b. Designed for assisting the handicapped.

We also cover:

a. Motorized golf carts and their equipment and accessories; and

b. Motorized vehicles designed or modified to operate at speeds not to exceed 15 miles per hours and for use off public roads

subject to the provisions under Special Amounts of Insurance.

4. "Aircraft" and parts.

5. "Hovercraft" and parts.

6. Personal property of roomers, roommates, boarders, or other tenants. This does not apply to property of roomers, roommates, boarders or other tenants who qualify as "insureds".

7. Personal property in an apartment regularly rented or held for rental to others by any "insured", except as provided in ADDITIONAL COVERAGES, Landlord's Furnishings.

8. Personal property rented or held for rental to others off the "residence premises".

9. "Business" data, records, recordings, images and photographs including such data stored in:

a. Books of account, drawings or other paper records; or,

b. Electronic storage media.

However, we do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market.

10. Personal data, records, recordings, images, and photographs, regardless of storage media. This includes songs, movies and other audio or video media which you purchase and download onto a computer or portable electronic media player, other than as provided in ADDITIONAL COVERAGES, Electronic Media. However, we do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market.

11. Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in ADDITIONAL COVERAGES, Credit Card Coverage and Identity Fraud Expense Coverage.

**COVERAGE D - Loss Of Use Protection**

The amount of insurance for Loss of Use shown on the Declarations is the total limit for the coverages that follow.

1. **Additional Living Expense.** If a loss covered under Section – I – LOSSES WE COVER makes that part of the "residence premises" where you reside uninhabitable, we cover the reasonable and necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

   Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere, in either event, not to exceed 12 months.

HO-3RFL (09-16)

0901119ca00d72d8                    USAA Confidential

However, if a loss covered under Section I – LOSSES WE COVER results from an event which is assigned a Property Claims Service (PCS) catastrophe code, payment will be the for the shortest time required to repair or replace the damage, or if you permanently relocate, the shortest time required for your household to settle elsewhere, in either event not to exceed 24 months. This extension does not increase the amount of insurance provided under Loss of Use Protection.

2.  **Fair Rental Value.** If a loss covered under Section I – LOSSES WE COVER makes that part of the **"residence premises"** rented to others or held for rental by you uninhabitable, we cover the fair rental value of that part of the **"residence premises"** rented to others or held for rental by you less any expenses that do not continue while the premises is uninhabitable.

Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental, but not to exceed 12 months.

3.  **Prohibited Use.** If a loss covered under Section I – LOSSES WE COVER results in an order from a civil authority prohibiting you from use of the **"residence premises"** as a result of direct damage to neighboring premises by a loss covered under Section I – LOSSES WE COVER, we cover the Additional Living Expense or Fair Rental Value loss as provided under 1. and 2. above for not more than two weeks.  A neighboring premise is defined as a premises that is adjacent to the **"residence premises"**.

The periods of time under 1., 2., and 3. above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

Except as provided in ADDITIONAL COVERAGES, Fungus, or Wet or Dry Rot, the Loss of Use coverage afforded under 1., 2., and 3. above does not apply to loss caused by **"fungus"**, or wet or dry rot.

No deductible applies to the coverage afforded under 1., 2., and 3. above.

## ADDITIONAL COVERAGES

Unless specifically addressed elsewhere in this policy, the coverages provided below are the only coverages provided for the following:

1.  **Debris Removal**

    a.  We will pay your reasonable expense for the removal of:

        (1) Debris of covered property if loss to the damaged property is covered under SECTION I – LOSSES WE COVER; or

        (2) Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the amount of insurance that applies to the damaged property. When the amount payable for the actual damage to the property plus the expense for debris removal exceeds the amount of insurance for the damaged property, an additional 5% of that amount of insurance will be available to cover debris removal expense.

    b.  We will also pay your reasonable expense, up to $1,000 in the aggregate, for the removal from the **"residence premises"** of:

        (1) Your tree(s) felled by the peril of windstorm or hail, or weight of ice, snow or sleet; or

0901119ca00d72d8

USAA Confidential

(2) A neighbor's tree(s) felled by a loss under **"named peril(s)"**.

provided the tree(s)

(3) Damage(s) a covered structure; or

(4) Does not damage a covered structure, but:

    (a) Blocks a driveway on the **"residence premises"** which prevents a **"motor vehicle"** that is registered for use on public roads or property, from entering or leaving the **"residence premises"**; or

    (b) Blocks a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage reduces the amount of insurance that applies to the covered property.

The policy deductible applies.

2. **Reasonable Repairs.** In the event that covered property is damaged by an applicable loss under Section I – LOSSES WE COVER, we will pay the reasonable expense incurred by you, for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable loss under SECTION I – LOSSES WE COVER. This coverage reduces the amount of insurance that applies to the covered property and does not relieve you of your duties in case of a loss to covered property, as set forth in SECTION I – CONDITIONS 2.d.

The policy deductible applies.

3. **Trees, Shrubs and Other Plants.**

We cover trees, shrubs, plants, lawns, or landscaping on the **"residence premises"**; for loss caused by the following Losses We Cover: Fire or Lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the **"residence premises"**, Vandalism or malicious mischief or Theft.

We will pay up to 5% of the amount of insurance that applies to the dwelling for all trees, shrubs, plants, lawns or landscaping. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for **"business"** purposes.

This coverage is additional insurance and does not reduce the amount of insurance.

The policy deductible applies.

4. **Fire Department Service Charge.**

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a loss under SECTION I – LOSSES WE COVER.

This coverage is additional insurance and does not reduce the amount of insurance.

No deductible applies to this coverage.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a loss under SECTION I – LOSSES WE COVER and for no more than 30 days after the property has been removed. We will also pay for reasonable expenses incurred by you for the removal and return of the covered property.

This coverage reduces the amount of insurance that applies to the property being removed.

The policy deductible applies.

USAA Confidential

0901119ca00d72d8

6. **Credit Card Coverage and Identity Fraud Expense Coverage.**

We will pay up to $5,000 in the aggregate for all loss and defense costs resulting from **Credit Card Coverage** and **Identity Fraud Expense Coverage.**

For the purposes of **Credit Card Coverage** and **Identity Fraud Expense Coverage,** a series of acts committed by any one person in which any one person is concerned or implicated is considered to be one loss, even if a series of acts continues into a subsequent policy period.

a. **Credit Card Coverage** also includes, fund transfer cards, forgery and counterfeit money. Under **Credit Card Coverage,** we pay for all loss and defense costs resulting from:

   (1) The legal obligation of any **"insured"** to pay because of the theft or unauthorized use of credit cards issued to or registered in any **"insured's"** name;

   (2) Loss resulting from theft or unauthorized use of electronic fund transfer cards or access devices used for deposit, withdrawal or transfer of funds, issued to or registered in any **"insured's"** name;

   (3) Loss to any **"insured"** caused by forgery or alteration of any **"insured's"** check or negotiable instrument written on an **"insured's"** bank account. This does not include loss by the acceptance of a forged, altered or counterfeit check, or other negotiable instrument, by an **"insured".**

   (4) Loss to any **"insured"** through acceptance in good faith of counterfeit United States or Canadian paper currency.

For losses covered by this additional insurance we will provide defense as follows:

   (1) We may investigate and settle any claim or suit as we deem to be appropriate. Any duty to defend a claim or suit ends when the amount we pay or tender for the loss equals the applicable amount of insurance.

   (2) If a suit is brought against any **"insured"** as a result of theft or unauthorized use of a credit card or fund transfer card, we will provide a defense at our expense by counsel of our choice. We have the option to defend at our expense any **"insured"** against any suit for the enforcement of payment under the forgery coverage.

This is additional insurance and does not reduce the amount of insurance.

No deductible applies to **Credit Card Coverage.**

b. Under **Identity Fraud Expense Coverage,** we pay for **"expenses"** and defense costs incurred by any **"insured"** as the direct result of **"identity fraud".**

With respect to the provisions of this coverage only, the following definitions are added:

**"Identity Fraud"** means the act of knowingly transferring or using, without lawful authority, a means of identification of any **"insured"** with the intent to commit, or aid or abet, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

**"Expenses"** means:

   (1) Costs for notarizing fraud affidavits or similar documents for financial institutions or similar credit grantors or credit agencies that have required that such affidavits be notarized;

HO-3RFL (09-16)

0901119ca00d72d8

USAA Confidential

CIC    03705 58 48      90A

(2) Costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors;

(3) Lost wages as a result of time taken off from work to meet with, or talk to, law enforcement agencies, credit agencies, merchandise, and/or legal counsel, or to complete fraud affidavits, not to exceed $250 per day;

(4) Loan application fees for re–applying for a loan or loans when original application is rejected solely because the lender received incorrect credit information resulting from "identity fraud";

(5) Reasonable attorney fees incurred, with our prior consent, for:

   (a) Defense of lawsuits brought against the "insured" by merchants or their collection agencies; and

   (b) The removal of any criminal or civil judgments wrongly entered against an "insured".

(6) Charges incurred for long distance telephone calls to merchants, law enforcement agencies, financial institutions or similar credit grantors, or credit agencies to report or discuss an actual "identity fraud".

(7) Research fees charged by merchants, financial institutions or similar credit grantors, or credit agencies resulting from "identity fraud".

This coverage is additional insurance and does not reduce the amount of insurance.

A $100 deductible applies to **Identity Fraud Expense Coverage.**

The following exclusions apply to **Credit Card Coverage** and **Identity Fraud Expense Coverage:**

(1) We do not cover forgery, theft or use of a credit card, electronic fund transfer card or access device:

   (a) By a resident of your household or any "insured";

   (b) By a person who has been entrusted with the card(s) or device(s);

   (c) If any "insured" has not complied with all terms and conditions under which the cards or devices are issued.

(2) We do not cover loss arising out of "business" pursuits, dishonesty, fraud, or criminal activity of any "insured".

7. **Loss Assessment.** We will pay up to $10,000 for your share of loss assessment charged against you by a corporation or association of property owners, for an event that occurs during the policy period, when the assessment is made as a result of **"sudden and accidental"** direct physical loss to the property, owned by all members collectively, caused by a loss under Section I – LOSSES WE COVER for **DWELLING PROTECTION COVERAGE** AND OTHER **STRUCTURES PROTECTION COVERAGE,** subject to all provisions of the policy.

This coverage does not apply to assessments made as a result of damage caused by:

a.   Earthquake; or

b.   Land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the **"residence premises".**

We do not cover loss assessments charged against you or a corporation or association of property owners by any government body.

The limit of $10,000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

HO-3RFL (09–16)

0901119ca00d72d8

USAA Confidential

CIC     03705 58 48     90A

This coverage is not limited by the expiration of this policy.

This coverage is additional insurance and does not reduce the amount of insurance.

No deductible applies to this coverage.

8. **"Collapse".** For an entire building or any part of a building covered by this insurance we insure for direct physical loss to covered property involving **"collapse"** of a building or any part of a building only when the **"collapse"** is caused by one or more of the following:

   a. **"Named peril(s)"** apply to covered buildings and personal property for loss insured by this additional coverage.

   b. Decay that is hidden from view, meaning damage that is unknown prior to **"collapse"** or that does not result from a failure to reasonably maintain the property;

   c. Insect or vermin damage that is hidden from view, meaning damage that is unknown prior to **"collapse"** or that does not result from a failure to reasonably maintain the property;

   d. Weight of contents, equipment, animals or people;

   e. Weight of rain which collects on a roof; or

   f. Use of defective material or methods in construction, remodeling or renovation if the **"collapse"** occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, water well, cistern flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e. and f. unless the loss is a direct result of the **"collapse"** of a building.

This coverage reduces the amount of insurance that applies to the damaged covered property.

The policy deductible applies.

9. **Lock Replacement.** When the dwelling door keys are stolen in a covered theft loss, we will pay the cost to:

   a. Change the combination in the lock hardware of the doors, or

   b. Change the lock hardware of the doors.

   The most we will pay for Lock Replacement is $250. No deductible applies to this coverage.

10. **Refrigerated Products.** We will pay you up to $500 for loss to the contents of a freezer or a refrigerator located on your **"residence premises",** as a consequence of power failure or mechanical breakdown. The $500 limit is the most we will pay in any one loss regardless of the number of freezers or refrigerators.

    The Power Failure exclusion under Section I – LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION does not apply to Refrigerated Products.

    This coverage does not increase the Personal Property Protection amount of insurance.

    No deductible applies to this coverage.

11. **Land.** If a loss covered under Section I – LOSSES WE COVER damages a building on the **"residence premises"** insured under Dwelling Protection or Other Structures Protection and the same loss causes the land necessary to support the building insured under Dwelling Protection or Other Structures Protection to become unstable, we will pay up to $10,000 for the cost required to replace, rebuild, stabilize or otherwise restore such land.

0901119ca00d72d8

USAA Confidential

CIC    03705 58 48    90A

This coverage is an additional insurance and does not reduce the amount of insurance.

The policy deductible applies.

12. **Glass or Safety Glazing Material.**

We cover:

a. The breakage of glass or safety glazing material caused by a loss under Section I – LOSSES WE COVER, which is part of a covered building, storm door or storm window; and

b. Damage to covered property by glass or safety glazing material which is part of a building storm door or storm window.

This coverage does not include loss on the **"residence premises"** if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. An insured dwelling being constructed is not considered vacant.

This coverage reduces the amount of insurance that applies to the damaged property.

The policy deductible applies.

13. **Landlord's Furnishings.** We will pay up to $2,500 for your appliances, your carpeting and other household furnishings located in an apartment on the **"residence premises"** regularly rented or held for rental to others by any **"insured"**, for loss caused by **"named peril(s)"**, other than theft.

The $2,500 limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishing involved in the loss.

This coverage reduces the Personal Property Protection amount of insurance.

The policy deductible applies.

14. **Building Ordinance or Law.** For loss caused by a loss under Section I – LOSSES WE COVER to buildings under Dwelling Protection and Other Structures Protection, we will pay the increased costs which are required and you actually incur to comply with any ordinance or law governing the rebuilding, repair or demolition of the damaged property.

The limit for this coverage will not be more than 5% of the Coverage A – Dwelling Protection amount of insurance.

This coverage is additional insurance and does not reduce the Dwelling Protection amount of insurance.

The policy deductible applies.

15. **Temporary Living Expenses.** We will pay up to $2,000 for necessary increase in costs which you incur to maintain your normal standard of living when the **"residence premises"** is uninhabitable due to a loss caused by earthquake, volcanic eruption, landslide, or if a civil authority prohibits your use of the **"residence premises"** because an earthquake, volcanic eruption or landslide has occurred.

This coverage is additional insurance and does not reduce the Loss Of Use Protection amount of insurance.

No deductible applies to this coverage.

16. **Fungus, or Wet or Dry Rot.**

1. We will pay up to a total of $2,500 for:

a. The cost to treat, remove or dispose of **"fungus"**, or wet or dry rot from covered property;

b. The cost to tear out and replace any part of the building or other covered property as needed to gain access to the **"fungus"**, or wet or dry rot; and/or

HO-3RFL (09–16)

0901119ca00d72d8

USAA Confidential

CIC      03705 58 48      90A

c. The cost to test, to detect, measure or evaluate air or property to confirm the absence, presence or level of **"fungus"**, or wet or dry rot whether performed prior to, during or after removal, repair, restoration, or replacement. The cost of such testing will be provided only to the extent that there is a reasonable probability that there is the presence of **"fungus"**.

which is the direct result of a loss under Section I – LOSSES WE COVER.

2. We will pay up to a $2, 000 for the necessary increase in costs which you incur to maintain your normal standard of living when the **"residence premises"** is uninhabitable due to a loss caused by, resulting from, or consisting of **"fungus"**, or wet or dry rot which is the direct result of Section I – LOSSES WE COVER.

This coverage is additional insurance and does not reduce the amount of insurance.

No deductible applies to this coverage once the policy deductible has been met.

17. **Military Uniforms and Equipment.** We will waive your deductible for loss to uniforms and military equipment, owned by you, including but not limited to clothing, insignia, flight cases, headsets, personal body armor and GPS devices for a loss caused by **"named peril(s)"** while you are on active or active reserve duty.

This coverage reduces the Personal Property Protection amount of insurance.

No deductible applies to this coverage.

18. **War.** To the extent that coverage for **"war"** is provided here, item 1.f. under **LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION** and the **"war"** exclusion in any endorsement attached to this policy do not apply.

We will pay up to $10,000 for:

a. Direct loss or damage to your personal property caused by **"war"**; or

b. Abandonment as a consequence of **"war"** subject to these conditions.

subject to the following conditions:

This coverage applies only:

a. To any **"insured"** who is subject to government reimbursement for loss to personal property under 31 USC 3721, commonly referred to as the Military Personnel and Civilian Employees Claims Act, as amended and supplemented, or any successor or replacement act; and

b. To loss that occurs anywhere outside the Continental United States, Alaska and Hawaii.

In addition to compliance with the other provisions of **Your Duties After Loss,** you must:

a. Report your claim to the U.S. Government, its affiliate or agency, and comply with its requirements;

b. Send us, within 60 days after our request, copies of all actual documents which outline the basis of the government's reimbursement for your loss including the amount paid.

The **Suit Against Us** clause is changed for loss by **"war"** only:

No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of payment by the government.

The **Loss Settlement** clause in this policy is changed for loss by **"war"** only to read:

HO-3RFL (09–16)

0901119ca00d72d8

USAA Confidential

"War" loss to personal property under this policy is not payable until the U.S. Government has made its final payment to you for the loss under 31 USC 3721 as amended and supplemented, or any successor or replacement act.

Subject to all policy provisions, our payment will be the total amount of your loss minus the U.S. government payment.

We will adjust all losses with you. We will pay you unless some other person is named in this policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss, and satisfactory evidence of the amount of the U.S. Government payment, or we reach an agreement with you.

This coverage reduces the Personal Property Protection amount of insurance.

No deductible applies to this coverage.

19. **Electronic Media,** meaning songs, movies and other audio or video media, which you purchased and downloaded onto a computer or portable electronic media player. We will pay up to $250 for a loss covered under **"named peril(s)"**, provided that you maintain records to document the actual purchase of this media. This coverage does not include personal data or records.

This coverage is additional insurance and does not reduce the Personal Property Protection amount of insurance.

The policy deductible applies.

# SECTION I - LOSSES WE COVER

## COVERAGE A - DWELLING PROTECTION COVERAGE AND COVERAGE B - OTHER STRUCTURES PROTECTION COVERAGE

We insure against **"sudden and accidental"**, direct, physical loss to tangible property described in PROPERTY WE COVER – Coverages A and B unless excluded in Section I – LOSSES WE DO NOT COVER.

## COVERAGE C - PERSONAL PROPERTY PROTECTION

We insure against **"sudden and accidental"**, direct physical loss to tangible property described in PROPERTY WE COVER – Coverage C caused by a peril listed below unless the loss is excluded in **LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION.**

1. **Fire or lightning.**

2. **Windstorm or hail.**

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand, or dust enters through this opening.

This peril includes loss to the **"watercraft"**, **"personal watercraft"**, and their trailers, furnishings, equipment and outboard motors, only while inside a fully enclosed building.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self–propelled missiles and spacecraft.

HO-3RFL (09–16)

USAA Confidential

0901119ca00d72d8

CIC     03705 58 48      90A

6. **Vehicles,** meaning damage caused by or resulting from an impact with a **"motor vehicle".** This does not include damage to personal property being transported by a **"motor vehicle"** unless this vehicle is itself involved in a collision.

7. **Smoke,** meaning **"sudden and accidental"** damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial smudging or operations.

8. **Vandalism or malicious mischief.**

9. **Theft,** including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

   This peril does not include loss caused by theft:

   a. Committed by any **"insured"** or any other person regularly residing on any part of the **"insured location"** for a period in excess of thirty consecutive days, if other permanent residency is established or claimed elsewhere;

   b. In or to a dwelling under construction, or materials and supplies for use in the construction until the dwelling is finished and occupied; or

   c. From that part of a **"residence premises"** rented by any **"insured"** to a person who does not qualify as an **"insured".**

   This peril does not include loss caused by theft that occurs away from the **"residence premises"** of:

   a. Property while at any other residence owned by, rented to, or occupied by any **"insured"** unless the **"insured"** has stayed at the temporary residence at any time during the 60 days immediately before the loss;

   b. **"Watercraft",** or **"personal watercraft"** including their furnishings, equipment and outboard motors; or

   c. Trailers and campers.

10. **Falling objects.**

    This peril does not include loss to property contained in a building unless the roof or an outside wall of a building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet,** which causes damage to property contained in a building.

12. **Discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance. A plumbing system does not include a sump pump or sump well designed to drain subsurface water from the interior foundation area even if such overflow results from the mechanical breakdown of the sump pump.

    This peril does not include loss:

    a. To the system or appliance from which the water or steam escaped; or

    b. Caused by or resulting from freezing except as provided in the peril of Freezing below; or

    c. On the **"residence premises"** caused by discharge or overflow which occurs off the **"residence premises".**

13. **Tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

HO-3RFL (09−16)                                                  Page 15 of 34

USAA Confidential

0901119ca00d72d8

This peril does not include loss on the **"residence premises"** if you have failed to:

a. Maintain heat in the building; or

b. Shut off the water supply and drain the system and appliances of water.

15. **Damage from artificially generated electrical current.**

16. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

---

## SECTION I - LOSSES WE DO NOT COVER

**LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND OTHER STRUCTURES PROTECTION.**

1. Unless otherwise stated in 3. below we do not insure for damage consisting of or caused directly or indirectly by any of the following, regardless of:

   (i) The cause of the excluded event or damage that; or

   (ii) Other causes of the loss that; or

   (iii) Whether the event or damage occurs, suddenly or gradually, involves isolated or widespread damage, or occurs as a result of any combination of these to; or

   (iv) Whether other causes or events act concurrently or in any sequence with the excluded event to

   produce the loss.

   a. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion does not apply if you have:

      (1) Maintained heat in the building; or

      (2) Shut off the water supply and drained the system and appliances of water;

   b. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

      (1) Swimming pool, hot tub, or spa, including their filtration and circulation system; or

      (2) Fence, pavement, patio; or

      (3) Foundation, retaining wall or bulkhead; or

      (4) Pier, wharf or dock.

   c. Theft in or to a dwelling under construction, or of materials and supplies for use in in the construction until the dwelling is finished and occupied;

   d. Vandalism and malicious mischief or breakage of glass and safety glazing materials, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 180 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

   e. Constant or repeated seepage or leakage of water or steam over a period of 14 days or more from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance;

   f. Wear and tear, marring, deterioration;

**HO-3RFL (09–16)**

0901119ca00d72d8

USAA Confidential

g.  Mechanical breakdown, latent defect, inherent vice, or any quality of the property that causes it to damage or destroy itself;

h.  Smog, rust, electrolysis or other corrosion;

i.  Smoke from agricultural smudging or industrial operations;

j.  Discharge, dispersal, seepage, migration, release or escape of **"pollutants"** unless the discharge, dispersal, seepage, migration, release or escape is itself caused by **"named peril(s)"** of this policy.

k.  Settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;

l.  Birds, rodents, insects;

m.  Animals owned or kept by any **"insured"**.

n.  Vermin meaning animals, other than (m.) above, that access real or personal property for foraging or shelter and by their presence cause damage to such property. Vermin include, but are not limited to armadillos, bats, beavers, coyotes, ferrets, opossums, porcupines, raccoons, skunks and squirrels.

o.  Nesting, infestation, discharge or release of waste products or secretions, by any birds, rodents, insects, vermin, or animals owned or kept by an **"insured"**.

p.  Pressure from, or presence or intrusion of, tree, shrub or plant roots.

2.  If items 1.f. through 1.p. above cause water damage which is not otherwise excluded, we cover the resulting water damage, including the cost of tearing out and replacing any part of a building necessary to repair a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance. We do not cover loss to the system or appliance from which this water escaped.

3.  If any item in 1. above directly causes a **"named peril(s)"** to occur, the resulting damage produced by the **"named peril(s)"** is covered unless otherwise excluded or excepted elsewhere in this policy.

**LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION**

1.  We do not insure for damage consisting of or caused directly or indirectly by any of the following regardless of:

    (i)  The cause of the excluded event or damage that; or

    (ii)  Other causes of the loss that; or

    (iii)  Whether the event or damage occurs, suddenly or gradually, involves isolated or widespread damage, or occurs as a result of any combination of these to; or

    (iv)  Whether other causes or events act concurrently or in any sequence with the excluded event to

    produce the loss.

    a.  **Ordinance or Law,** meaning the increased cost of demolition, repairs or rebuilding due to the enforcement or compliance with any ordinance or law regulating the construction, repair or demolition of a building or other structure other than as provided in ADDITIONAL COVERAGES, Building Ordinance or Law.

0901119ca00d72d8

USAA Confidential

b. **Earth Movement** arising from or caused by or resulting from human or animal forces or any act of nature, meaning:

(1) Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

(2) Landslide; mudslide or mudflow;

(3) Subsidence, sinkhole, erosion or movement resulting from improper compaction, site selection or any other external forces;

(4) Earth sinking, rising or shifting, expanding or contracting of earth, all whether combined with water or not;

unless direct loss by fire, theft, explosion, or breakage of glass or safety glazing material which is part of building, storm door or storm window results and then we will pay only for the resulting loss.

c. **Water Damage** arising from, caused by or resulting from human or animal forces, any act of nature, or any other source. Water damage means damage caused by or consisting of:

(1) Flood, surface water, waves, tidal water, storm surge, tsunami, any overflow of a body of water, or spray from any of these, whether or not driven by wind; or

(2) Any release, overflow, escape or rising of water otherwise held, contained, controlled or diverted by a dam, levee, dike or by any type of water containment, water diversion or flood control device; or

(3) Water or water−borne material which backs up through sewers or drains or which overflows from a sump pump, sump well or similar device designed to drain water from the foundation area; or

(4) Water or water−borne material below the surface of the ground, including water which exerts pressure on or seeps through a building, sidewalk, driveway, foundation, swimming pool or other structure;

unless direct loss by fire, explosion or theft results from water damage and then we will pay only for the resulting loss.

d. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the **"residence premises"** except as provided in ADDITIONAL COVERAGES, Refrigerated Products.

If damage caused by a loss insured under Section I − LOSSES WE COVER results on the **"residence premises"**, we will pay only for that damage.

e. **Neglect,** by or failure of any **"insured"** to use all reasonable means to save and preserve property at and after the time of a loss or damage or the event resulting in loss or damage.

f. **"War"** and any consequence of **"war"**, except as provided in ADDITIONAL COVERAGES, War. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

g. **Nuclear Hazard,** meaning

(1) Any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

(2) Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Section I − LOSSES WE COVER.

USAA Confidential

0901119ca00d72d8

CIC    03705 58 48    90A

(3) This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

h. **Intentional Loss,** meaning loss arising out of any act any **"insured"** commits or conspires to commit with the intent to cause a loss. Even **"insureds"** who did not commit or conspire to commit the act causing the loss are not entitled to coverage.

i. **"Fungus", Wet or Dry Rot or Bacteria,** other than as provided in ADDITIONAL COVERAGES, **Fungus or Wet or Dry Rot.**

j. **"Collapse",** other than as provided in ADDITIONAL COVERAGES, **"Collapse".**

k. **Diminution in value,** meaning any reduction in value that would remain after damaged property is repaired or replaced.

2. We do not insure for loss caused by any of the following. However, any ensuing loss to property described in Dwelling Protection and Other Structures Protection not precluded by any other provision in this policy is covered.

a. **Weather Conditions** which includes but is not limited to heat, cold, humidity, rain, ice, snow, sleet, wind, hail, or drought. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND OTHER STRUCTURES PROTECTION, item 1. above to produce the loss.

b. **Acts or decisions,** including the failure to act or decide, of any person, group, organization or governmental body;

c. **Faulty, negligent, inadequate or defective;**

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or maintenance.

This limitation applies to loss or damage to any property on or off the **"residence premises".**

---

# SECTION I - CONDITIONS

1. **Insurable Interest and Amount of Insurance.**

   Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

   a. To the **"insured"** for more than the amount of the **"insured's"** interest at the time of loss; or

   b. For more than the applicable amount of insurance

   whichever is less.

2. **Your Duties After Loss.** In case of a loss to which this insurance may apply you must see that the following are done:

   a. Promptly notify us or our agent about the loss. This policy will not provide any coverage for your loss if you fail to notify us about the loss within one year after the loss actually occurs;

   b. Notify the police in case of loss by theft, vandalism, or any other criminal act;

HO-3RFL (09-16)

0901119ca00d72d8

USAA Confidential

CIC     03705 58 48     90A

c. Notify the credit card or fund transfer card company in case of loss under ADDITIONAL COVERAGES, Credit Card Coverage and Identity Fraud Expense Coverage;

d. (1) Protect the property from further damage;

   (2) Make reasonable and necessary repairs to protect the property; and

   (3) Keep an accurate record of repair expenses;

e. Cooperate with us in the investigation of a claim;

f. At our request prepare an inventory of claimed personal property showing the quantity, description, age, replacement cost and amount of loss. Include with the inventory all bills, receipts and related documents that support the items listed and substantiate the figures shown in the inventory;

g. As often as we reasonably require:

   (1) Show the damaged property;

   (2) Provide us with records and documents we request and permit us to make copies; and

   (3) Submit to and sign, while not in the presence of any other "insured":

      (a) Statements; and

      (b) Examinations under oath; and

   (4) Produce employees, members of your household or others for examinations under oath to the extent it is within your power to do so.

h. Send to us, within 60 days after our request, your signed proof of loss which sets forth, to the best of your knowledge and belief:

   (1) The time and cause of loss;

(2) The interest of the "insured" and all others in the property involved and all liens on the property;

(3) Other insurance which may cover the loss;

(4) Changes in title or occupancy of the property during the term of the policy;

(5) Specifications of damaged buildings and detailed repair estimate;

(6) The inventory of claimed personal property described in 2.f. above;

(7) Receipts for Additional Living Expenses and Temporary Living Expenses incurred and records that support the Fair Rental Value loss; and

(8) Evidence or affidavit stating the amount and cause of loss that supports a claim under ADDITIONAL COVERAGES, Credit Card Coverage, and receipts, bills or other records that support your claim for expenses under Identity Fraud Expense Coverage.

3. **Loss Settlement.** We will not pay more than the amount of insurance that applies to the damaged, destroyed or stolen property as stated on the Declarations page unless such amount is increased due to ADDITIONAL COVERAGES or the Home Protector Coverage. Subject to the amount of insurance covered losses are settled as follows:

a. For the following property;

   (1) Personal property; and

   (2) Awnings, outdoor antennas, satellite dishes, and outdoor equipment, whether or not attached to the buildings; and

   (3) Structures that are not buildings; and

   (4) All covered structures whether or not they are buildings, if located away from the "residence premises".

HO-3RFL (09-16)

0901119ca00d72d8

USAA Confidential

CIC   03705 58 48   90A

We will pay the lesser of:

(1) The **"actual cash value"**; or

(2) Our cost to replace the property with property of like kind, quality, age and condition; or

(3) Our cost to repair or our cost to restore the property to the condition it was in just before the loss.

b. All items under Dwelling Protection and buildings on the **"residence premises"** under Other Structures Protection. We will pay our cost to repair or our cost to replace the damaged property with similar construction and for the same use on the premises shown in the Declarations, subject to the following:

(1) When our cost to repair or replace the damaged property is less than $5,000 we will pay you the full replacement cost amount without deduction for depreciation.

(2) When our cost to repair or our cost to replace the damaged property is greater than $5,000, and until actual repair or replacement is completed, we will pay only the **"actual cash value"**, not to exceed our cost to repair or our cost to replace the damaged part of the property.

(a) To receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within one year after the date of loss, unless during this period you request in writing that this time limit be extended for an additional 180 days, and notify us within 30 days after the work has been completed.

(b) When repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily

spend to repair or replace the damaged part of the property, or our cost to repair or replace the damaged part of the property whichever is less.

4. **Loss or Damage to a Pair or Set.** In case of loss or damage to a pair or set we may elect to:

a. Repair or replace any part to restore the pair or set to its value before the loss; or

b. Pay the difference between **"actual cash value"** of the property before and after the loss.

5. **Matching of Undamaged Property.** In case of damage to property, we will not pay to repair or replace undamaged property due solely to:

a. Mismatch of color between undamaged material and new material used to replace faded, weathered or oxidized damaged material; or

b. Mismatch between undamaged material and new material used to repair or replace damaged material due to outdated, obsolete or discontinued products.

6. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the **"residence premises"** is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

HO-3RFL (09-16)

0901119ca00d72d8

USAA Confidential

Each party will:

a.  Pay its own appraiser; and

b.  Bear the other expense of the appraisal and umpire equally.

Any fees for expert witnesses or attorneys will be paid by the party who hires them. Neither the umpire nor the appraisers will have a financial interest that is conditioned on the outcome of the specific matter for which they are called to serve.

This is not a provision providing for or requiring arbitration. The appraisers and umpire are only authorized to determine the **"actual cash value"**, replacement cost, or cost to repair the property that is the subject of the claim. They are not authorized to determine coverage, exclusions, conditions, forfeiture provisions, conditions precedent, or any other contractual issues that may exist between you and us. The appraisal award cannot be used by either you or us in any proceeding concerning coverage, exclusions, forfeiture provisions, conditions precedent, or other contractual issues. However, once contractual liability is admitted or determined, the appraisal award is binding upon you and us. This appraisal process and authority granted to the appraisers and the umpire can only be expanded and modified by written mutual consent signed by you and us.

**7.  Other Insurance.** Other insurance includes the coverage and any deductible required by such other insurance.

If a loss covered by this policy, other than a loss covered by the ADDITIONAL COVERAGE, Credit Card Coverage and Identity Fraud Expense Coverage or golf cart coverage, is also covered by other insurance, we will pay only the proportion of the loss that the amount of insurance that applies under this policy bears to the total amount of insurance covering the loss.

Coverage provided by the ADDITIONAL COVERAGE, Credit Card Coverage and Identity Fraud Expense Coverage is excess over other insurance that covers the same loss. This coverage is also excess over any other contractual conditions, rights or benefits that provide relief from or indemnification for your obligations to pay any amounts to any third party resulting from a loss covered by this coverage. In no event will we pay more than the applicable amount of insurance.

This policy does not apply to motorized golf carts and their equipment and accessories when any other insurance also applies.

**8.  Suit Against Us.** No action can be brought against us unless you have:

a.  Given us notice of the loss;

b.  Complied with all other policy provisions; and

c.  Started action

within two years after the date of the loss.

**9.  Our Option.** If we give you written notice within 30 days after we receive your notice of loss, we may repair or replace any part of the damaged property with like property.

**10. Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

a.  Reach an agreement with you;

b.  There is an entry of a final judgment; or

c.  There is a filing of an appraisal award with us.

**11. Abandonment.** You may not abandon property to us for any reason.

0901119ca00d72d8

USAA Confidential

CIC     03705 58 48     90A

**12. Mortgage Clause.** The word "mortgagee" includes trustee.

If a mortgagee is named in this policy, any covered loss under Section I – LOSSES WE COVER for Dwelling Protection or Other Structures Protection will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

If we deny your claim because you or any other **"insured"** has failed to comply with the terms and conditions of this policy that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

a. Promptly notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware; and

b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

c. Sends to us, within 60 days after our request, a signed sworn proof of loss which sets forth, to the best of the mortgagee's knowledge and belief:

 (1) The time and cause of loss;

 (2) The interest of the mortgagee and all others in the property involved and all liens on the property;

 (3) Other insurance which may cover the loss;

 (4) Changes in title or occupancy of the property during the term of the policy;

 (5) Specifications of damaged buildings and detailed repair estimates.

 Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

d. Submits to examinations under oath.

If we decide to cancel or not to renew this policy, the mortgagee will be properly notified at least 10 days before the date cancellation or nonrenewal takes effect.

If we pay the mortgagee for any loss and deny payment to you:

a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

 Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**13. No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**14. Salvage and Recovered Property.**

a. We have an interest in the salvage value of any property for which we have made a payment under the Loss Settlement Condition. At our option, property that we have paid for or replaced becomes our property.

b. If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property may be retained by you. If you retain the property, the loss payment, or any lesser amount to which we agree, must be refunded to us.

HO-3RFL (09–16)

0901119ca00d72d8

USAA Confidential

CIC    03705 58 48    90A

**15. Concealment, Misrepresentation or Fraud.** If you or any other **"insured"**, whether before or after an **"occurrence"** or loss under this policy has:

a. Intentionally concealed or misrepresented any material fact or circumstance;

b. Engaged in fraudulent conduct; or

c. Made false statements which, if known by us, would have caused us not to:

   (1) Issue the policy;

   (2) Issue the policy in as large an amount;

   (3) Provide coverage for the hazard resulting in the loss; or

   (4) Issue the policy for the same amount of premium or at the same rate

relating to the issuance of this policy or in the presentation of a claim, we may deny coverage or declare the entire policy void as to the interest of all **"insureds"** and refund the unearned premium as of the date of the conduct described in a., b., or c. above. Any unearned premium refund will be offset by any amounts paid to any **"insured"** under the policy after the date of the conduct described in a., b., or c. above.

We reserve all rights to seek recovery of the amount we pay from any person committing concealment, misrepresentation or fraud for all payments made and cost incurred.

**16. Duties to Determine and Maintain Policy Limits.** It is your responsibility to determine and maintain adequate amounts of insurance to totally replace or repair your dwelling, other structures and personal property.

**17. Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72–hour period will be considered as one volcanic eruption.

**18. Adjustment to Building Cost.** The amount of insurance for Section I, Dwelling Protection, shown in the Declarations of this policy, will be revised at each policy renewal to reflect the rate of change in the replacement cost of your dwelling. The resulting limit will be rounded to the next $1,000.

Section I, Other Structures Protection, Personal Property and Loss of Use, will also be adjusted. The rules then in use by us will determine the new amounts for these coverages.

These amounts will not be reduced without your consent.

You have the right to refuse any resulting change in amount. You must do so before the effective date of such change.

We have the right to change to another replacement cost calculation tool as of any renewal date. We will give you at least 30 days prior written notice if we do this. Such change must apply to all similar policies issued by us.

## SECTION II - LIABILITY COVERAGES

**COVERAGE E - Personal Liability**

If a claim is made or a suit is brought against any **"insured"** for **"damages"** because of **"bodily injury"** or **"property damage"** caused by an **"occurrence"** to which this coverage applies, we will:

1. Pay up to our limit of liability for the **"damages"** for which the **"insured"** is legally liable; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may

HO-3RFL (09–16)

Page 24 of 34

USAA Confidential

0901119ca00d72d8

investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for **"damages"** resulting from the **"occurrence"** equals our limit of liability. This coverage does not provide defense to any **"insured"** for criminal prosecution or proceedings.

We will not pay for punitive damages or exemplary damages, fines or penalties.

**COVERAGE F - Medical Payments To Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing **"bodily injury"**. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral expenses. This coverage does not apply to you or regular residents of your household except **"residence employees"**. As to others, this coverage applies only:

1. To a person on the **"insured location"** with the permission of any **"insured"**; or

2. To a person off the **"insured location"**, if the **"bodily injury"**:

   a. Arises out of a condition on the **"insured location"** or the ways immediately adjoining;

   b. Is caused by the activities of any **"insured"**;

   c. Is caused by a **"residence employee"** in the course of the **"residence employee's"** employment by any **"insured"**; or

   d. Is caused by an animal owned by or in the care of any **insured**.

## SECTION II - EXCLUSIONS

1. **Coverage E - Personal Liability and Coverage F - Medical Payments to Others** do not apply to **"bodily injury"** or **"property damage"**:

   a. Which is reasonably expected or intended by any **"insured"** even if the resulting **"bodily injury"** or **"property damage"**:

      (1) Is of a different kind, quality or degree than initially expected or intended; or

      (2) Is sustained by a different person, entity, real or personal property, than initially expected or intended.

   However, this exclusion does not apply to **"bodily injury"** resulting from the use of lawful reasonable force by any **"insured"** to protect persons or property.

   b. (1) Arising out of or in connection with a **"business"** engaged in by any **"insured"**. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the **"business"**.

      (2) Arising out of the rental or holding for rental of any part of any premises by any **"insured"**. This exclusion does not apply to the rental or holding for rental of any **"insured location"**.

         (a) On an occasional basis if used only as a residence;

         (b) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

0901119ca00d72d8                    USAA Confidential

(c) In part, as an office, school, studio or private garage.

c. Arising out of the rendering or failure to render **"professional services"**;

d. Arising out of a premises:

(1) Owned by any **"insured"**; or

(2) Rented to any **"insured"**; or

(3) Rented to others by any **"insured"**;

that is not an **"insured location"**;

e. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of **"motor vehicles"** including trailers, owned or operated by or rented or loaned to any **"insured"**

(2) The entrustment by any **"insured"** of a **"motor vehicle"** to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of anyone using a "motor vehicle" excluded in paragraph (1) or (2) above.

This exclusion does not apply to the permissive use, loading or unloading of:

(1) A trailer not towed by or carried on a **"motor vehicle"**;

(2) A **"motor vehicle"** designed for recreational use off public roads, not subject to motor vehicle registration and:

(a) Not owned by an **"insured"**; or

(b) Owned by any **"insured"** provided the **"occurrence"** takes place on any **"insured location"**; or

(c) Owned by any **"insured"** and designed or modified to operate at speeds not to exceed 15 miles per hour.

(3) A motorized golf cart that is designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an **"occurrence"**, is within the legal boundaries of:

(a) A golfing facility and is parked or stored there, or being used by any **"insured"** to:

(i) Play the game of golf or for other recreational or leisure activity allowed by the facility; or

(ii) Travel to and from an area where **"motor vehicles"** or golf carts are parked or stored; or

(iii) Cross public roads at designated points to access other parts of the golfing facility

(b) A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an **"insured's"** residence.

(4) A **"motor vehicle"** not subject to motor vehicle registration which is:

(a) Used to service any **"insured's"** residence; or

(b) Designed for assisting the handicapped; or

(c) In dead storage on an **"insured location"**.

f. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of; or

(2) The entrustment by any **"insured"** to any person of; or

USAA Confidential

0901119ca00d72d8

(3) Vicarious liability, whether or not statutorily imposed, for the actions of anyone using:

a **"watercraft"** or **"personal watercraft"**.

This exclusion does not apply to any **"watercraft"** owned or borrowed by, or rented to any **"insured"**:

(1) With inboard, outboard or inboard-outdrive motor power of up to 50 horsepower; or

(2) That is a sailing vessel, with or without auxiliary power, which is up to 35 feet in length.

This exclusion does not apply to any **"personal watercraft"** or **"watercraft"** that is being stored.

g. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of: or

(2) The entrustment by any **"insured"** to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of anyone using:

an **"aircraft"** or **"hovercraft"**.

h. Caused directly or indirectly by **"war"** including any consequence of **"war"**. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

i. Arising out of the transmission of a communicable disease by any **"insured"**.

j. Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s). Controlled substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does

apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

k. Arising out of the actual, alleged, or threatened discharge, dispersal, release, escape, seepage or migration of **"pollutants"** however caused and whenever occurring. This includes any loss, cost or expense arising out of any:

(1) Request, demand or order that any **"insured"** or others test for, monitor, clean up, remove, contain, treat, detoxify, or assess the effects of **"pollutants"**; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **"pollutants"**.

l. Arising out of exposure to lead paint or other lead-based products.

m. Arising out of exposure to asbestos.

n. Arising out of or caused by the commission of, attempting to flee from, or avoiding apprehension for a criminal act for which intent is a necessary element.

o. Arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of or presence of any **"fungus"**, wet or dry rot or bacteria.

p. Arising out of your failure, intentionally or unintentionally, to disclose information regarding the sale or transfer of real or personal property.

q. Arising out of any actual, alleged or threatened:

HO-3RFL (09-16)

0901119ca00d72d8

USAA Confidential

CIC     03705 58 48     90A

(1) Sexual misconduct; or

(2) Sexual harassment; or

(3) Sexual molestation.

r.  Arising out of any actual, alleged or threatened physical or mental abuse.

Exclusions d., e., f., and g. do not apply to **"bodily injury"** to a **"residence employee"** arising out of and in the course of the **"residence employee's"** employment by any **"insured"**.

2.  **Coverage E - Personal Liability** does not apply to:

a.  Liability:

(1) For any loss assessment charged against you as a member of an association, corporation or community of property owners other than as provided in SECTION II – ADDITIONAL COVERAGES, Loss Assessment.

(2) Under any contract or agreement. However, this exclusion does not apply to written contracts:

(a) That directly relate to the ownership, maintenance or use of any **"insured location"**; or

(b) Where the liability of others is assumed by any **"insured"** prior to an **"occurrence"**.

unless excluded in (1) above or elsewhere in this policy;

b.  **"Property damage"** to property owned by the **"insured"**.

c.  **"Property damage"** to property rented to, occupied or used by or in the care of any **"insured"**. This exclusion does not apply to **"property damage"** caused by fire, smoke or explosion.

d.  **"Bodily injury"** to any person eligible to receive any benefits:

(1) Voluntarily provided; or

(2) Required to be provided, whether or not actually provided;

by any **"insured"** under any:

(1) Workers' compensation law;

(2) Non-occupational disability law; or

(3) Occupational disease law.

e.  **"Bodily injury"** or **"property damage"** for which any **"insured"** under this policy:

(1) Is also an **"insured"** under a nuclear energy liability policy; or

(2) Would be an **"insured"** under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by:

(1) Nuclear Energy Liability Insurance Association;

(2) Mutual Atomic Energy Liability Underwriters;

(3) Nuclear Insurance Association of Canada; or any of their successors'.

f.  **"Bodily injury"** to you or any **"insured"** within the meaning of part a., b., or c. of **"insured"** as defined.

g.  Punitive or exemplary damages, fines, or penalties.

3.  **Coverage F - Medical Payments to Others** does not apply to **"bodily injury"**:

a.  To a **"residence employee"** if the **"bodily injury"**:

(1) Occurs off the **"insured location"**; and

HO-3RFL (09-16)                                    Page 28 of 34

USAA Confidential

(2) Does not arise out of or in the course of the **"residence employee's"** employment by an **"insured"**.

b. To any person eligible to receive benefits:

(1) Voluntarily provided; or

(2) Required to be provided;

under any:

(1) Workers' compensation law; or

(2) Non-occupational disability law; or

(3) Occupational disease law.

c. From any:

(1) Nuclear reaction; or

(2) Nuclear radiation; or

(3) Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

(4) Any consequence of any of these.

d. To any person, other than a **"residence employee"** of any **"insured"**, regularly residing on any part of the **"insured location"** or residing on any part of the **"insured location"** for a period in excess of thirty consecutive days prior to the date of loss, if other permanent residency is established or claimed elsewhere.

## SECTION II - ADDITIONAL COVERAGES

Unless specifically addressed elsewhere in this policy, the coverages provided below are the only coverages provided for the following and do not reduce the limit of liability:

1. **Claim Expenses.** We pay:

a. Expenses we incur and costs taxed against any **"insured"** in any suit we defend;

b. Premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond:

c. Reasonable expenses incurred by any **"insured"** at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit;

d. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in

court that part of the judgment which does not exceed the limit of liability that applies;

e. Prejudgment interest awarded against the **"insured"** on that part of the judgment we pay. If we make an offer to pay the applicable limit of liability, we will not pay any prejudgment interest based on that period of time after the offer.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by any **"insured"** for **"bodily injury"** covered under this policy. We will not pay for first aid to you or any other **"insured"**.

3. **Damage to Property of Others.** We will pay, at replacement cost, up to $1,000 per **"occurrence"** for **"property damage"** to property of others caused by any **"insured"**.

We will not pay for **"property damage"**:

HO-3RFL (09-16)

Page 29 of 34

USAA Confidential

0901119ca00d72d8

CIC    03705 58 48    90A

a.  To the extent of any amount recoverable under SECTION I of this policy;

b.  Caused intentionally by any **"insured"** who is 13 years of age or older;

c.  To property owned by any **"insured"**;

d.  To property owned by or rented to a tenant of any **"insured"** or a resident in your household; or

e.  Arising out of:

    (1)  A **"business"** engaged in by any **"insured"**;

    (2)  Any act or omission in connection with a premises owned, rented or controlled by any **"insured"**, other than the **"insured location"**; or

    (3)  The ownership, maintenance, occupancy, operation, use, loading or unloading of **"aircraft"**, **"hovercraft"**, **"watercraft"**, **"personal watercraft"** or **"motor vehicle"**. This exclusion e.(3) does not apply to a **"motor vehicle"** that:

        (a)  Is designed for recreational use off public roads,

        (b)  Is not owned by any **"insured"**; and

        (c)  At the time and place of the **"occurrence"**, is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

4.  **Loss Assessment.** We will pay up to $10,000 for your share of loss assessment charged against you by a corporation or association of property owners, when the assessment is made as a result of:

a.  **"Bodily injury"** or **"property damage"** caused by an **"occurrence"** not excluded under SECTION II of this policy; or

b.  Liability for an act committed by a director, officer or trustee during the policy period in the capacity as a director, officer or trustee, provided:

    (1)  The director, officer or trustee is elected by the members of a corporation or association of property owners; and

    (2)  The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charged against you as owner or tenant of the **"residence premises"**.

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $10,000 is the most we will pay for loss arising out of:

a.  One **"occurrence"**, including continuous or repeated exposure to substantially the same general harmful conditions; or

b.  A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

SECTION II, Coverage E – Personal Liability Exclusion 2.a.(1) does not apply to this coverage.

This coverage is not limited by the expiration of this policy.

HO-3RFL (09–16)                                   Page 30 of 34

USAA Confidential

0901119ca00d72d8

CIC    03705 58 48    90A

# SECTION II - CONDITIONS

1. **Limit of Liability.** The Coverage E limit is shown in the Declarations. This is our limit for all damages from each **"occurrence"** regardless of the number of **"insureds"**, claims made or persons injured. All **"bodily injury"** and **"property damage"** resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one **"occurrence"**.

   The Coverage F limit is shown in the Declarations. This is our limit for all medical expenses payable for **"bodily injury"** to one person as the result of one accident.

2. **Severability of Insurance.** This insurance applies separately to each **"insured"**. This condition does not increase our limit of liability for any one **"occurrence"**.

3. **Concealment, Misrepresentation or Fraud.** If you or any other **"insured"**, whether before or after an **"occurrence"** or loss under this policy has:

   a. Concealed or misrepresented any material fact or circumstance;

   b. Engaged in fraudulent conduct; or

   c. Made false statements which if known by us, would have caused us not to:

      (1) Issue the policy;

      (2) Issue the policy in as large an amount;

      (3) Provide coverage for the hazard resulting in the loss; or

      (4) Issue the policy for the same amount of premium or at the same rate

   relating to the issuance of this policy or in the presentation of a claim we may deny coverage as to the interest of all"**insureds**".

We reserve all rights to seek recovery from any person committing concealment, misrepresentation or fraud for all payments made and cost incurred.

4. **Duties After Loss.** In case of an accident or **"occurrence"**, the **"insured"** will perform the following duties that apply. You will help us by seeing that these duties are performed:

   a. Give written notice to us or our agent as soon as is practical, which sets forth:

      (1) The identity of the policy and **"insured"**;

      (2) Reasonably available information on the time, place and circumstances of the accident or **"occurrence"**; and

      (3) Names and addresses of any claimants and witnesses.

   b. Cooperate with us in the investigation, settlement or defense of any claim or suit.

   c. Promptly forward to us every notice, demand, summons or other process relating to the accident or **"occurrence"**.

   d. At our request, help us:

      (1) To make settlement;

      (2) To enforce any right of contribution or indemnity against any person or organization who may be liable to any **"insured"**;

      (3) With the conduct of suits and attend hearings and trials;

      (4) To secure and give evidence and obtain the attendance of witnesses;

   e. Under Damage to Property of Others, if we request, submit to us within 60 days after notice of the loss, a sworn

HO-3RFL (09–16)

Page 31 of 34

0901119ca00d72d8

USAA Confidential

statement of loss and show the damaged property, if in the **"insured's"** control.

f.  The **"insured"** will not, except at the **"insured's"** own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the **"bodily injury"**.

5.  **Duties of an Injured Person - Coverage F - Medical Payments to Others.** The injured person or someone acting for the injured person will:

    a.  Give us written proof of claim, under oath if required, as soon as is practical; and

    b.  Authorize us to obtain copies of medical reports and records.

    The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

6.  **Payment of Claim - Coverage F - Medical Payment to Others.** Payment under this coverage is not an admission of liability by any **"insured"** or us.

7.  **Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.

    No one will have the right to join us as a party to any action against any **"insured"**. Also, no action with respect to Coverage E can be brought against us until the obligation of the **"insured"** has been determined by final judgment or agreement signed by us.

8.  **Bankruptcy of any Insured.** Bankruptcy or insolvency of any **"insured"** will not relieve us of our obligations under this policy.

9.  **Other Insurance - Coverage E - Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTIONS I AND II - CONDITIONS

1.  **Policy Period.** This policy applies only to loss in SECTION I or **"bodily injury"** or **"property damage"** in SECTION II, which occurs during the policy period.

2.  **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

    This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

    a.  A subsequent edition of this policy; or

    b.  An amendatory endorsement.

3.  **Waiver or Change of Policy Provisions.** A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

4.  **Cancellation.**

    a.  You may cancel this policy at any time. But the effective date of cancellation cannot be earlier than the date of your request.

    b.  We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice

**HO-3RFL (09-16)**

0901119ca00d72d8

USAA Confidential

CIC     03705 58 48        90A

may be delivered to you, mailed to you by postal mail at your mailing address shown in the Declarations or provided to you electronically if we have your consent and agreement on file to receive documents electronically.

Proof of mailing, whether by postal mail or by electronic media or communication channel, will be sufficient proof of notice. Electronic notice will be provided upon placing it on our website pursuant to an electronic transaction agreement, or upon directing it to an electronic mailbox or voice channel that you designate for the purpose of receiving mail.

(1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

(2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

(3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

(a) Upon discovery of fraud, concealment or misrepresentation made by or with the knowledge of any **"insured"** in obtaining this policy, continuing the policy, or presenting a claim under this policy; or

(b) If the risk has changed substantially since the policy was issued;

(c) Upon discovery that the **"insured"** does not meet USAA Group membership eligibility requirements; or

(d) Any other reason allowed by law.

Cancellation can be done by notifying you at least 30 days before the date cancellation takes effect.

(4) When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

(5) If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

5. **Nonrenewal.** We may elect not to renew this policy. We may do so by letting you know in writing 30 days before policy termination. This nonrenewal notice may be delivered to you, mailed to you by postal mail at your mailing address shown in the Declarations or provided to you electronically if we have your consent and agreement on file to receive documents electronically.

Proof of mailing, whether by postal mail or by electronic media or communication channel, will be sufficient proof of notice. Electronic notice will be provided upon placing it on our website pursuant to an electronic transaction agreement, or upon directing it to an electronic mailbox or voice channel that you designate for the purpose of receiving mail.

6. **Subrogation.** Any **"insured"** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights or recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an **"insured"** must:

a. Sign and deliver all related papers;

HO-3RFL (09-16)

Page 33 of 34

0901119ca00d72d8

USAA Confidential

CIC    03705 58 48    90A

b. Cooperate with us in a reasonable manner; and

c. Do nothing after a loss to prejudice such rights.

7. **Spouse Access.** The **"member"** and we agree that the **"member"** and resident spouse are customers and applicants for purposes of state and federal privacy and insurance laws. The resident spouse will have access to the same information available to the **"member"** and may conduct the same transactions as the **"member"** including making coverage changes, signing regulatory forms, terminating the policy, and selecting delivery preferences for policy documents.

The **"member"** may notify us that he/she no longer wants the resident spouse to have access or transaction authority on his/her policy, and we will not permit the residence spouse to access policy information or conduct transactions on this policy.

8. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

9. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

a. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

b. For the purpose of this condition **"insured"** includes:

(1) Any member of your household who is an **"insured"** at the time of your death, but only while a resident of the **"residence premises"**; and

(2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

Copyright, USAA, 2008. All rights reserved.
Includes copyrighted material Insurance Services Office, with its permission.

HO-3RFL (09-16)

0901119ca00d72d8

USAA Confidential



CIC    03705 58 48    90A

**HO-CGCC (08−16)**

# YOUR POLICY PROVIDES COVERAGE FOR A CATASTROPHIC GROUND COVER COLLAPSE THAT RESULTS IN THE PROPERTY BEING CONDEMNED AND UNINHABITABLE. OTHERWISE, YOUR POLICY DOES NOT PROVIDE COVERAGE FOR SINKHOLE LOSSES. YOU MAY PURCHASE ADDITIONAL COVERAGE FOR SINKHOLE LOSSES FOR AN ADDITIONAL PREMIUM.

## CATASTROPHIC GROUND COVER COLLAPSE COVERAGE
### (Florida)

**DEFINITIONS**

The following definitions are added:

**"Catastrophic Ground Cover Collapse"** means geological activity that results in all of the following:

a.  The abrupt collapse of the ground cover;

b.  A depression in the ground cover clearly visible to the naked eye;

c.  **"Structural damage"** to the **"principal building"** insured under this policy, including the foundation; and

d.  The insured structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that **"principal building."**

**"Catastrophic Ground Cover Collapse"** does not include damage consisting merely of the settling or cracking of a foundation, structure, or building.

**"Primary Structural Member"** means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

**"Primary Structural System"** means an assemblage of primary structural members.

**"Principal Building"** means

For HO−3R only:

the dwelling as described in Coverage A on the **"residence premises"** shown in the Declarations.

**"Principal building"** does not include any other buildings or structures at this location.

For HO−6R only:

the unit where you reside on the **"residence premises"** shown in the Declarations. **"Principal building"** does not include any other buildings or structures at this location.

CATALOG−NUMBER
93689−0916
Page 1 of 3

**HO-CGCC (08−16)**

USAA Confidential

CIC      03705 58 48      90A

**"Structural Damage"** means the **"principal building"**, regardless of the date of its construction, has experienced the following:

a.  Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represents a safety hazard as defined within the Florida Building Code;

b.  Foundation displacement or deflection in excess of acceptable variances as defined in ACI-318-95 or the Florida Building Code, which results in settlement related damage to the **"primary structural members"** or **"primary structural systems"** that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those **"primary structural members"** or **"primary structural systems"** exceeds one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location:

c.  Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical **"primary structural members"** to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

d.  Damage that results in the building, or any portion of the building containing **"primary structural members"** or **"primary structural systems"**, being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

e.  Damage occurring on or after October 15, 2005, that qualifies as **"substantial structural damage"** as defined in the Florida Building Code.

## SECTION I - LOSSES WE COVER

The following peril is added:

**"Catastrophic Ground Cover Collapse"**

## SECTION I - LOSSES WE DO NOT COVER

In the HO-3R under LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION and in the HO-6R under LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND PERSONAL PROPERTY PROTECTION, Item **1.b. Earth Movement** is deleted and replaced by the following:

b.  **Earth Movement,** arising from or caused by or so resulting from human or animal forces or any act of nature, meaning:

(1)  Earthquake including land shock waves or tremors before, during or after a volcanic eruption;

(2)  Landslide; mudslide or mudflow

(3)  Subsidence; erosion or movement resulting from improper compaction, site selection or any other external forces;

**HO-CGCC** (08-16)                                                              Page 2 of 3

0901119ca00d72d8                              USAA Confidential

CIC      03705 58 48      90A

(4) Sinkhole;

(5) Earth sinking, rising or shifting, expanding or contraction of earth, all whether combined with water or not;

unless direct loss by fire; theft; explosion; or breakage of glass or safety glazing material which is part of a building, storm door or storm window results and then we will pay only for the resulting loss.

Earth Movement does not include **"catastrophic ground cover collapse"**.

Except as specifically modified in this endorsement, all provisions of the policy to which this endorsement is attached also apply to this endorsement.

Copyright, USAA 2015. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**HO-CGCC** (08-16)

Page 3 of 3

0901119ca00d72d8

USAA Confidential

CIC     03705 58 48        90A

HO-FL (08-16)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**FLORIDA SPECIAL PROVISIONS**

**DEFINITIONS**

5.  **"Collapse"** is deleted and replaced by the following:

5.  **"Collapse"** means:

    a.  A sudden failing or caving in; or

    b.  A sudden breaking apart or deformation such that the building or part of a building is in imminent peril of caving in and is not fit for its intended use.

7.  **"Fungus"** is deleted and replaced by the following:

7.  **"Fungus"** means any type or form of fungus including mold or mildew, and any mycotoxins, spores, scents or by–products produced or released by fungus.

9.  **"Insured"** e. is deleted and replaced by the following:

    e.  With respect to any vehicle or conveyance to which this policy applies:

        (1) Persons while engaged in your employ or that of any other person included in 9.a., 9.b. or 9.c. above; or

        (2) Other persons using the vehicle on an **"insured location"** with your consent.

The following is added to **10. "Insured location"**:

10. **"Insured location"** means:

    h.  The part of other premises, other structures and grounds used by you as a residence; and

    (1) Which is shown in the Declaration; or

    (2) Which is acquired by you during the policy period for your use as a residence.

19. **"Residence Employee"** is deleted and replaced by the following:

19. **"Residence Employee"** means:

    a.  An employee of any **"insured"** whose primary duties are related to the maintenance or use of the **"residence premises"**, including household or domestic service; or

    b.  One who performs similar duties elsewhere not related to the **"business"** of an **"insured."**

21. **"Sudden and Accidental"** is deleted.

**SECTION I - PROPERTY WE COVER**

**Coverage C - Personal Property Protection**

Under **Property We Do Not Cover:**

Item **1.** is deleted.

Item **3.** is deleted and replaced by the following:

3.  **"Motor vehicles(s)"**. This includes but is not limited to the following while in or upon a **"motor vehicle"**:

    a.  Equipment, accessories, and parts;

    b.  Any device or instrument for the transmitting, recording, receiving or reproduction of data, sound or pictures

CATALOG–NUMBER
126118–0916
Page 1 of 16

HO-FL (08-16)

0901119ca00d72d8

USAA Confidential

which is permanently installed in a **"motor vehicle"**. We do not cover antennas, tapes, wire, discs or other

c.  media, for use with any such device or instrument.

We do cover **"motor vehicle(s)"** or all other motorized land conveyances not subject to motor vehicle registration which are:

a.  Used solely to service any residence; or

b.  Designed for assisting the handicapped.

Subject to the provisions under Special Amounts of Insurance we also cover:

a.  Motorized golf carts and their equipment and accessories; and

b.  Motorized vehicles designed or modified to operate at speeds not to exceed 15 miles per hour and for use off public roads

The following is added to **Property We Do Not Cover:**

Controlled substances included on Schedule 1 as defined by 21 U.S.C.A. Section 812, at the time of loss. This exclusion does not apply to lawfully prescribed substances.

**COVERAGE D - Loss of Use Protection**

The lead-in paragraph is deleted and replaced by the following:

The SECTION I – LOSSES WE DO NOT COVER apply to the coverage provided under Loss of Use below. The amount of insurance for Loss of Use shown in the Declarations is the total limit for the coverages listed below.

1.  **Additional Living Expense** is deleted and replaced by the following:

In the HO–3R:

1.  **Additional Living Expense.** If a loss covered under SECTION I – LOSSES WE COVER makes that part of the **"residence premises"** where you reside uninhabitable, we cover the necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

    Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere, in either event not to exceed 24 months.

In the HO–3R and HO–6R:

2.  **Fair Rental Value** is deleted and replaced by the following:

2.  **Fair rental Value.** If a loss under SECTION I – LOSSES WE COVER makes that part of the **"residence premises"** rented to others or held for rental by you uninhabitable, we cover the fair rental value of that part of the **"residence premises"** rented to other or held for rental by you less any expenses that do not continue while the premises is uninhabitable.

    Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental, but not to exceed 24 months.

In HO–3R and HO–6R:

Item **3. Prohibited Use** is deleted and replaced by the following:

3.  **Prohibited Use.** If a loss covered under SECTION I – LOSSES WE COVER results in an order from a civil authority prohibiting you from the use of the **"residence premises"** as a result of direct damage to neighboring premises by a loss covered under SECTION I – LOSSES WE COVER, we cover the Additional Living Expense and/or Fair Rental Value loss as provided under 1. and 2. Above for not more than two weeks.

**HO-FL (08–16)**

USAA Confidential

0901119ca00d72d8

## ADDITIONAL COVERAGES

The lead–in paragraph is deleted and replaced by the following:

Unless specifically addressed elsewhere in this policy, the coverages provided below are the only coverages provided for the following. The SECTION I – LOSSES WE DO NOT COVER apply to these coverages unless otherwise stated.

**Under 6. Credit Card Coverage and Identity Fraud Expense Coverage,** Item **b.,** **"Expenses"** (3) is deleted and replaced by the following:

    (3) Lost wages as a result of time taken off work to meet with, or talk to, law enforcement agencies, credit agencies, merchants, and/or legal counsel, or to complete fraud affidavits, not to exceed $250 per day;

**7. Loss Assessment** is deleted and replaced by the following:

In HO–3R and HO–6R:

**7. Loss Assessment.** We will pay up to $50,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the **"residence premises"**, by a corporation or association of property owners. The assessment must be made as a result of sudden and accidental direct physical loss to the property, owned by all members collectively, caused by a loss under SECTION I – LOSES WE COVER for **DWELLING PROTECTION COVERAGE and OTHER STRUCTURES PROTECTION COVERAGE,** subject to all provisions of the policy.

This coverage does not apply to assessments made as a result of damage caused by:

    a. Earthquake; or

    b. Land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the **"residence premises"**.

We do not cover loss assessments charged against you or a corporation or association of property owners by any government body.

The limit of $50,000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

Condition **1. Policy Period** under Section I and II – Conditions does not apply to this coverage.

This is additional insurance and does not reduce the amount of insurance.

No deductible applies to this coverage.

In the HO–6R the following is added to **7. Loss Assessment:**

However, the maximum amount of loss assessment coverage for any one property loss, regardless of the number of assessments, shall be an amount equal to your unit–owner's loss assessment in effect one day before the date of occurrence. Any changes to the limits of your unit–owner's coverage for loss assessments made on or after the day before the occurrence are not applicable to such loss.

In the HO–3R:

Item **12. Glass or Safety Glazing Material** item a. is deleted and replaced by the following:

    a. The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and

In the HO–6R:

Item **11. Glass or Safety Glazing Material** item a. is deleted and replaced by the following:

    a. The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and

HO-FL (08–16)

0901119ca00d72d8

USAA Confidential

CIC    03705 58 48    90A

In the HO—3R:

Item **14. Building Ordinance or Law** is deleted and replaced by:

14. **Building Ordinance or Law.** For loss caused by a loss under Section I — LOSSES WE COVER to buildings under Dwelling Protection and Other Structures Protection, we will pay the increased costs which are required and you actually incur to comply with any ordinance or law governing the construction, repair or demolition of the damaged property, including the costs of removing debris.

The limit for this coverage will not be more than 5% of the Coverage A — Dwelling Protection amount of insurance.

This coverage is additional insurance and does not reduce the Dwelling Protection amount of insurance.

In the HO—6R:

Item **12. Building Ordinance or Law** is deleted and replaced by:

12. **Building Ordinance or Law.** For loss caused by a loss under Section I — LOSSES WE COVER to buildings under Dwelling Protection, we will pay the increased costs which are required and you actually incur to comply with any ordinance or law governing the construction, repair or demolition of the damaged property, including the costs of removing debris.

The limit for this coverage will not be more than 5% of the Coverage A — Dwelling Protection amount of insurance.

This coverage is additional insurance and does not reduce the Dwelling Protection amount of insurance.

In the HO—6R:

Under **15. War,** the **Suit Against Us** Clause is changed to the following:

No action can be brought unless the policy provisions have been complied with and the action is started within five years after the date of payment by the government.

Item **16. Fungus, or Wet or Dry Rot** is deleted and replaced by the following:

16. **Fungus, or Wet or Dry Rot.**

If as a direct result of a loss covered under SECTION I—LOSSES WE COVER, we will pay up to a total of $10,000 for:

a. The cost to treat, remove or dispose of **"fungus"**, or wet or dry rot from covered property;

b. The cost to tear out and replace any part of the building or other covered property as needed to gain access to the **"fungus"**, wet or dry rot;

c. The cost to test, to detect, measure or evaluate the air or property to confirm the absence, presence or level of **"fungus"**, or wet or dry rot whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reasonable probability that there is the presence of **"fungus"**, or wet or dry rot; and/or

d. The necessary increase in costs which you incur to maintain your normal standard of living when the **"residence premises"** is uninhabitable due to a loss caused by, resulting from, or consisting of **"fungus"**, or wet or dry rot.

The amount shown above is the most we will pay during the policy term for the total of all loss or costs payable under this Additional Coverage regardless of the:

a. Number of locations insured; or

b. Number of claims made.

**HO-FL (08—16)**

Page 4 of 16

0901119ca00d72d8

USAA Confidential

CIC     03705 58 48      90A

This coverage is additional insurance and does not reduce the amount of insurance.

No deductible applies to this coverage once the policy deductible has been met.

In the HO-3R:

Under **18. War**, item b. is deleted and replaced by the following:

b.  Abandonment as a consequence of **"war"**;

Under **18. War**, the **Suit Against Us** clause is changed to the following:

No action can be brought unless the policy provisions have been complied with and the action is started within five years after the date of the payment by the government.

## SECTION I - LOSSES WE COVER

In HO-3R:

## COVERAGE A - DWELLING PROTECTION COVERAGE AND COVERAGE B - OTHER STRUCTURES PROTECTION COVERAGE

The lead-in paragraph is deleted and replaced by the following:

We insure against sudden and accidental, direct physical loss to tangible property described in PROPERTY WE COVER-COVERAGES A and B unless excluded in SECTION I – LOSSES WE DO NOT COVER.

In HO-6R:

## COVERAGE A - DWELLING PROTECTION COVERAGE AND COVERAGE C - PERSONAL PROPERTY PROTECTION

The lead-in paragraph is deleted and replaced by the following:

We insure against sudden and accidental, direct physical loss to tangible property described in PROPERTY WE COVER-DWELLING

PROTECTION and PERSONAL PROPERTY PROPTECTION caused by a peril listed below unless excluded in SECTION I – LOSSES WE DO NOT COVER.

Item **7. Smoke** is deleted and replaced by the following:

7.  **Smoke**, meaning sudden and accidental damage from smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial smudging or operations.

In HO-3R:

## COVERAGE C - PERSONAL PROPERTY PROTECTION

The lead-in paragraph is deleted and replaced by the following:

We insure against sudden and accidental, direct physical loss to tangible property described in PROPERTY WE COVER-COVERAGE C caused by a peril listed below unless the loss is excluded in SECTION I – LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION.

Item **7. Smoke** is deleted and replaced by the following:

7.  **Smoke**, meaning sudden and accidental damage from smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial smudging or operations.

Under **9. Theft**, item a. is deleted and replaced by the following:

a.  Committed by any **"insured"** or any other person regularly residing on any part of the **"insured location"** for a period in excess of thirty consecutive days, even if the other permanent residency is established or claimed elsewhere;

**HO-FL** (08-16)

0901119ca00d72d8

USAA Confidential

Item **14. Freezing** is deleted and replaced by the following:

**14. Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the **"residence premises"** while the dwelling is unoccupied if you have failed to:

a.   Maintain heat in the building; or

b.   Shut off the water supply and drain the system and appliances of water.

HO–3R Only:

## SECTION I - LOSSES WE DO NOT COVER

**LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND OTHER STRUCTURES PROTECTION.**

The lead in paragraph of item 1., including (i) through (iv) is deleted and replaced by the following:

1.   Unless otherwise stated in 3. below we do not insure for damage consisting of or caused by any of the following, regardless of whether the event or damage occurs suddenly or gradually, involves isolated or widespread damage, or occurs as a result of any combination of these to produce the loss.

Item 1.a. is deleted and replaced by the following:

a.   Freezing of plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed and then, only if you have failed to:

(1)  Maintain heat in the building; or

(2)  Shut off the water supply and drain the system and appliance of water.

Item 1.e is deleted and replaced by the following:

e.   Constant or repeated seepage or leakage of water or steam over a period of 14 days or more from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance, unless such seepage or leakage of water or steam and the resulting damage is unknown to all **"insureds"** and is hidden within walls or beneath the floor or above the ceilings of a structure;

The following is added to paragraph 1:

q.   Involving **"Collapse"**, other than as provided in ADDITIONAL COVERAGES, **"Collapse"**.

Item 3. is deleted and replaced by the following:

**3.**   Under item 1. above any ensuing loss to property described in Coverages A and B not otherwise excluded or excepted in this policy is covered.

**LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION**

Item **1.i. "Fungus", Wet or Dry Rot or Bacteria** is deleted and replaced by the following:

i.   **"Fungus", Wet or Dry Rot**, other than as provided in ADDITIONAL COVERAGES, **Fungus or Wet or Dry Rot**.

This exclusion does not apply when **"Fungus", Wet or Dry Rot** result from fire or lightning.

j.   **"Collapse"** is deleted.

**HO-FL (08–16)**                                                Page 6 of 16

0901119ca00d72d8

USAA Confidential

For HO-3R Only:

Item 2. a. is deleted and replaced by the following:

2.a. **Weather Conditions** which includes but is not limited to heat, cold, humidity, rain, ice, snow, sleet, wind, hail or drought. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION item 1. above to produce the loss.

## SECTION I - CONDITIONS

Under **2. Your Duties After Loss**, the lead in paragraph and item a. is deleted and replaced by the following:

2. **Your Duties After Loss.** In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an **"insured"** seeking coverage, or a representative of either:

   a. Promptly notify us or your agent about the loss, except for the following:

      (1) A claim, supplemental claim or reopened claim for loss or damage caused by hurricane or other windstorm must be given to us in accordance with the terms of this policy within three years after the hurricane first made landfall or a windstorm other than hurricane caused the covered damage. (Supplemental claim or reopened claim means an additional claim for recovery from us for losses from the same hurricane or other windstorm which we have previously adjusted pursuant to the initial claim.)

This provision concerning time for submission of a claim does not affect any limitation for legal action against us as provided in this policy under the Suit Against Us Condition, including any amendment to that condition.

3. **Loss Settlement**

In the HO-3R:

Item b.(2) under 3. Loss Settlement is deleted and replaced by the following:

   (2) When the cost to repair or replace the damaged property is greater than $5,000, we will settle the loss as follows:

      (a) We will initially pay the **"actual cash value"** of the damaged property, minus an applicable deductible.

      (b) We will then pay the necessary amounts actually spent to repair or replace the damaged property as work is performed and expenses are incurred

      (c) If a total loss, we will pay the replacement cost amount without deduction for depreciation.

The following is added to **Loss Settlement:**

## VALUATION CLAUSE

**"Total loss"** means direct physical damage to a dwelling under COVERAGE A – Dwelling or any structure covered under COVERAGE B – Other Structures caused to such an extent that the remnant of the dwelling or other structure cannot be repaired back to its original condition. **"Total loss"** also means direct physical damage to a dwelling or other structure where, though only partly damaged, it is rendered unfit for the purpose for which it was constructed, or there is an ordinance or law prohibiting its repair. **"Total loss"** also means direct physical damage to a

HO-FL (08-16)

0901119ca00d72d8

USAA Confidential

dwelling or other structure where, though only partly damaged, the cost to repair is greater than the limit stated on the policy Declarations.

a.  If a **total loss,** caused by a covered peril, occurs to any dwelling covered under Coverage A – Dwelling Protection of this policy, we agree the loss settlement shall be the amount stated on the policy Declarations for Coverage A.

b.  If a **"total loss",** caused by a covered peril, occurs to any structure covered under Coverage B – Other Structures Protection, the other structures are covered for the amount stated on the policy Declarations for Coverage B – Other Structures Protection.

The loss settlement amount will not apply if you have made a change increasing the risk without our consent, or if there has been a fraudulent or criminal act on the part of you or anyone acting in your behalf.

c.  Paragraphs a. and b. do not apply if a **"total loss"** is caused in part by a covered peril and a noncovered peril. When this occurs our liability shall be limited to the amount of the loss caused by the covered peril. However, if the covered peril alone would have caused the **"total loss",** we will pay only the amount for which the property was insured as specified in the policy.

In the event you are paid benefits which are duplications in whole or in part of our payment pursuant to this section, we shall have the right to recover payments subject to the **Other Insurance** clause.

In the HO–6R:

Item b.(2) under 3. Loss Settlement is deleted and replaced by the following:

(2)  When the cost to repair or replace the damaged property is greater than $5,000, we will settle the loss as follows:

(a)  We will initially pay the **"actual cash value"** of the damaged property, minus any applicable deductible.

(b)  We will then pay the necessary amounts actually spent to repair or replace the damaged property as work is performed and expenses are incurred.

(c)  If a **"total loss",** we will pay the replacement cost amount without deduction for depreciation.

The following is added to item **5. Matching of Undamaged Property:**

However, when the replaced items do not match in quality, color or size, we will make reasonable repairs or replacement of items in adjoining areas.

Item **6. Appraisal.** is deleted and replaced by the following:

**6.  Mediation or Appraisal**

If you and we:

a.  Are engaged in a dispute regarding a claim under this policy, either party may demand a mediation of the loss in accordance with the rules established by the Florida Department of Financial Services. The loss amount must be $500 or more, prior to the application of the deductible, or there must be a difference of $500 or more between the loss settlement amount we offer and the loss settlement amount you request. The settlement in the course of the mediation is binding only if both parties agree, in writing, on the settlement and you have not rescinded the settlement within three business days after reaching settlement. You may not rescind the settlement after cashing or depositing the settlement check or draft we provided to you.

HO-FL (08–16)

USAA Confidential

0901119ca00d72d8

CIC      03705 58 48      90A

We will pay the cost of conducting any mediation except when you fail to appear at a mediation. That mediation will then be rescheduled upon your payment of the total cost for the rescheduled mediation. However, if we fail to appear at a mediation without good cause, we will pay the actual cash expenses you incur in attending the mediation and also pay the total cost for the rescheduled mediation.

b.  Fail to agree on the amount of loss, either party may request an appraisal of the loss. However, both parties must agree to the appraisal. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you and we may request that the choice be made by a judge of a court of record in the state where the **"residence premises"** is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of the loss.

Each party will:

c.  Pay its own appraiser; and

d.  Bear the other expenses of the appraisal and the umpire equally. Any fees for expert witnesses or attorneys will be paid by the party who hires them. Neither the umpire nor the appraisers will have a financial interest that is conditioned on the outcome of the specific matter for which they are called to serve.

This is not a provision providing for or requiring arbitration. The appraisers and the umpire are only authorized to determine the **"actual cash value"**, replacement cost, or cost to repair the property that is the subject of the claim. They are not authorized to determine coverage, exclusions, conditions, forfeiture provisions, conditions precedent, or any other contractual issues that may exist between you and us. The appraisal award cannot be used by either you or us in any proceeding concerning coverage, exclusions, forfeiture provisions, conditions precedent or other contractual issues. However, once contractual liability is admitted or determined, the appraisal award is binding upon you and us.

Item **7. Other Insurance** is deleted and replaced by the following:

7.  **Other Insurance.** Other insurance includes the coverage and any deductible required by such other insurance.

    If a loss covered by this policy is also covered by other insurance, we will pay as follows:

    a.  Coverage provided by the ADDITIONAL COVERAGE, Credit Card Coverage and Identity Fraud Expense Coverage is excess over other insurance that covers the same loss. This coverage is also excess over any other contractual conditions, rights or benefits that provide relief from or indemnification for your obligations to pay any amounts to any third party resulting from a loss covered by this coverage. In no event will we pay more than the applicable amount of insurance; or

    b.  For a loss to personal property that is separately described and specifically insured by other insurance, whether or not that policy is primary or excess, we will be excess over that insurance for a loss that is also covered under this policy; or

    c.  For all other coverages we will pay only the proportion of the loss that the amount of insurance that applies under this policy bears to the total amount of the insurance covering the loss; or

HO-FL (08-16)

Page 9 of 16

USAA Confidential

0901119ca00d72d8

CIC     03705 58 48     90A

d. This policy does not apply to motorized golf carts and their equipment and accessories when any other insurance also applies.

8. **Suit Against Us** is deleted and replaced by the following:

8. **Suit Against Us.** No action can be brought against us unless you have:

   a. Given us notice of the loss,

   b. Complied with all other policy provisions, and

   c. Started the action

   within five years from the date of loss.

9. **Our Option** provision has been deleted.

10. **Loss Payment** is deleted and replaced by the following:

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable upon the earlier of the following:

    a. 20 days after we receive your proof of loss and reach written agreement with you; or

    b. 60 days after we receive your proof of loss and;

       (1) There is an entry of a final judgment; or

       (2) There is a filing of an appraisal award with us; or

    c. We will pay or deny a claim or a portion of such claim within 90 days after we receive notice of an initial, reopened or supplemental claim from you unless the failure to pay such claim or a portion of the claim is caused by

factors beyond our control which reasonably prevent such payment.

15. **Concealment, Misrepresentation or Fraud** is deleted and replaced by the following:

15. **Concealment, Misrepresentation or Fraud.** If you or any other **"insured"** whether before or after an **"occurrence"** or loss under this policy has:

    a. Intentionally concealed or misrepresented any material fact or circumstance;

    b. Engaged in fraudulent conduct; or

    c. Made material false statements which, if known by us, would have caused us not to:

       (1) Issue the policy;

       (2) Issue the policy in as large an amount;

       (3) Provide coverage for the hazard resulting in the loss; or

       (4) Issue the policy for the same amount of premium or at the same rate.

We may:

    a. Declare the entire policy void as to the interest of all **"insureds"** and refund the premium as of the date of the conduct described in a., b., or c. occurs if the conduct is committed during the issuance of the policy. Any premium refund will be offset by any amounts paid to any **"insured"** under the policy after the date of the conduct described in a., b., or c. above, or

    b. We may deny coverage relating to conduct described in a. or b. above while in the presentation of a claim.

If the policy has been in effect for more than 90 days, we will not deny a claim based on credit information available in public records.

**HO-FL (08-16)**

**Page 10 of 16**

0901119ca00d72d8

USAA Confidential

We reserve all rights to seek recovery of the amount we pay from any person committing concealment, misrepresentation or fraud for all payments made and cost incurred.

Item **16. Duties to Determine and Maintain Policy Limits** is deleted and replaced by the following:

**16. Duties to Determine and Maintain Policy Limits.** It is your responsibility to determine and maintain adequate amounts of insurance to totally replace or repair your dwelling and other structures.

The following Condition is added:

**Reducing The Risk Of Loss**

We may occasionally provide you with products or services that assist you in preventing or reducing the risk of loss, and may provide an incentive for your use of these items.

## SECTION II - EXCLUSIONS

Under **1. Coverage E - Personal Liability and Coverage F - Medical Payments to Others**, item **e.**;

This exclusion does not apply to the permissive use, loading or unloading of:

Is deleted and replaced by the following:

This exclusion does not apply to the ownership, maintenance, permissive use, loading or unloading of:

Under **1. Coverage E - Personal Liability and Coverage F - Medical Payments to Others**, item **f.**, the following is added under:

This exclusion does not apply to any **"watercraft"** owned or borrowed by or rented to any **"insured"**:

(3) That is powered solely by current, paddles or oars.

Under **1. Coverage E - Personal Liability and Coverage F - Medical Payments to Others**, item **o.** is deleted.

Under **2. Coverage E - Personal Liability**, item **e.** is deleted and replaced by the following:

e. **"Bodily injury"** or **"property damage"** for which any **"insured"** under this policy:

(1) Is also an **"insured"** under a nuclear energy liability policy; or

(2) Would be an **"insured"** under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by:

(1) Nuclear Energy Liability Insurance Association;

(2) Mutual Atomic Energy Liability Underwriters;

(3) Nuclear Insurance Association of Canada;

or any of their successors'.

Under **3. Coverage F Medical Payments to Others** item **d.** is deleted and replaced by the following:

d. To any person, other than a **"residence employee"** of any **"insured"**, regularly residing on any part of the **"insured location"**.

## SECTION II - ADDITIONAL COVERAGES

**4. Loss Assessment** is deleted and replaced by the following:

In HO-3R and HO-6R:

**4. Loss Assessment.** We will pay up to $50,000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:

HO-FL (08-16)

0901119ca00d72d8

USAA Confidential

a. **"Bodily injury"** or **"property damage"** caused an **"occurrence"** not excluded under SECTION II of this policy; or

b. Liability for an act committed by a director, officer or trustee in the capacity as a director, officer or trustee, provided:

    (1) The director, officer or trustee is elected by the members of a corporation or association of property owners; and

    (2) The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies to assessments only to loss assessments charged against you as owner or tenant of the **"residence premises"**.

We do not cover loss assessments charged against you or a corporation or association of property owners by any government body.

Regardless of the number of assessments, the limit of $50,000 is the most we will pay for loss arising out of:

a. One **"occurrence"**, including continuous or repeated exposure to substantially the same general harmful conditions; or

b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

SECTION II, Coverage E – Personal Liability Exclusion 2.a.(1) does not apply to this coverage.

Condition **1. Policy Period** under Section I and II – Conditions does not apply to this coverage.

In the HO–6R the following is added to **4. Loss Assessment**:

HO-FL (08–16)

However, the maximum amount of loss assessment coverage for any one property loss, regardless of the number of assessments, shall be an amount equal to your unit–owner's loss assessment in effect one day before the date of occurrence. Any changes to the limits of your unit–owner's coverage for loss assessments made on or after the day before the occurrence are not applicable to such loss.

## SECTION II - CONDITIONS

**1. Limit of Liability** is deleted and replaced by the following:

**1. Limit of Liability**

a. Except as modified below the Coverage E – Personal Liability limit is shown in the Declarations. Our limit for all damages resulting from any one **"occurrence"** will not be more than the limit of liability for Coverage E as shown on the Declarations. All **"bodily injury"** and **"property damage"** resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one **"occurrence"**.

b. **Sublimits of Liability**

    (1) Our total aggregate liability under Coverage E – Personal Liability for the total of all damages arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of ,or presence of any **"fungus"** or wet or dry rot will not be more than the aggregate limit of $50,000. This is the most we will pay regardless of the:

        (a) Number of locations insured under the policy:

        (b) Number of persons injured;

        (c) Number of persons whose property is damaged;

        (d) Number of **"insured's"**;

Page 12 of 16

0901119ca00d72d8

USAA Confidential

(e) Number of **"occurrences"** or claims made.

This sublimit is within, but does not increase the Coverage E – Personal Liability limit of liability. It applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

(2) Subject to Paragraph a. above, our total liability under Coverage E – Personal Liability for damages for which an **"insured"** is legally liable because of statutorily imposed vicarious parental liability not otherwise excluded is $10,000. This sublimit is within, but does not increase the Coverage E – Personal Liability limit of liability.

c. The limit of liability in a. above and sublimits in b. above apply regardless of the number of **"insureds"**, claims made or persons injured.

d. Our total liability under Coverage F – Medical Payments to Others for all medical expense payable for **"bodily injury"** to one person as a result of one accident will not be more than the limit of liability for Coverage F – Medical Payments as shown on the Declarations.

With respect to the Sublimits of Liability, item (1) above, **2. Severability of Insurance** is deleted and replaced by the following.

2. **Severability of Insurance.** This insurance applies separately to each **"insured"** except with respect to the Aggregate Sublimit of liability described in b. (1) Sublimits of Liability above. This condition will not increase the limits of liability for this coverage.

3. **Concealment, Misrepresentation or Fraud** is deleted and replaced by the following:

3. **Concealment, Misrepresentation or Fraud.** We may deny coverage as to the interest of all **"insureds"** if you or any other **"insured"**, whether before or after an **"occurrence"** or loss under this policy, has:

a. Intentionally concealed or misrepresented any material fact or circumstance;

b. Engaged in fraudulent conduct relating to this insurance; or

c. Made material false statements, which if known by us, would have caused us not to:

(1) Issue the policy;

(2) Issue the policy in as large an amount;

(3) Provide coverage for the hazard resulting in the loss; or

(4) Issue the policy for the same amount of premium or at the same rate.

If the policy has been in effect for more than 90 days, we will not deny a claim based on credit information available in public records.

We reserve all rights to seek recovery from any person committing concealment, misrepresentation or fraud for all payments made and cost incurred.

**SECTIONS I AND II - CONDITIONS**

4. **Cancellation.** Item b. is deleted and replaced by the following:

b. When this policy has been in effect for 90 days or less, we may cancel immediately if there has been a material misstatement or misrepresentation or failure to comply with underwriting requirements.

HO-FL (08–16)                                                    Page 13 of 16

0901119ca00d72d8                    USAA Confidential

CIC     03705 58 48     90A

c.  We may also cancel this policy subject to the following provisions.

(1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

However, if the **"residence premises"** designated in this policy is secured by a mortgage and the policy is cancelled for nonpayment of premium due to the failure of the lender to make timely payment, the policy will be reinstated retroactive to the date of cancellation if;

(a) The premium is not more than 90 days overdue; and

(b) Payment is received.

(2) When this policy has been in effect for 90 days or less, we may cancel for any reason, except we may not cancel:

(a) On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the insured has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

(b) On the basis of a single claim on a property insurance policy which was the result of water damage unless we can demonstrate that the **"insured"** failed to take action reasonably requested by us to prevent a future similar occurrence of the damage to the property.

(c) On the basis of the lawful use, possession, or ownership of a firearm or ammunition.

Except as provided in item b. and c.(1) above, we will let you know of our action at least 20 days before the date cancellation takes effect.

(3) When this policy has been in effect for more than 90 days, we may not cancel:

(a) On the basis of the lawful use, possession, or ownership of a firearm or ammunition; or

(b) On the basis of credit information available in public records.

(4) When this policy has been in effect for more than 90 days, we may cancel:

(a) If there has been a material misstatement:

(b) If the risk has changed substantially since the policy was issued;

(c) in the event of failure to comply, within 90 days after the effective date of coverage, with underwriting requirements established by us prior to the policy effective date; or

(d) If the cancellation is for all **"insureds"** under the policies of this type for a given class of **"insureds"**.

Except as provided in item b. and c.(1) above, we may do so by delivering to you or mailing to you at your address shown in the Declarations written notice at least 120 days before the effective date of the cancellation together with the specific reasons for cancellation.

d.  When this policy is cancelled, the premium for the policy period from the date of cancellation to the expiration date will be refunded pro rata.

HO-FL (08-16)                                    Page 14 of 16

USAA Confidential

0901119ca00d72d8

e.  If the return premium is not refunded with the notice of cancellation or when the policy is returned to us, we will refund within 15 days after the date cancellation takes place.

f.  A written cancellation notice, together with the specific reasons for cancellation, will be delivered to you, or mailed to you at your mailing address shown in the Declarations.

Proof of mailing by postal mail will be sufficient proof of notice.

5.  **Nonrenewal** is deleted and replaced by the following:

5.  **Nonrenewal.** We may elect not to renew this policy.

We may do so by delivering to you or mailing to you at your address shown in the Declarations written notice at least 120 days before the effective date of the nonrenewal together with specific reasons for nonrenewal.

Proof of mailing by postal mail will be sufficient proof of notice.

However, we will not nonrenew this policy:

a.  On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the **"insured"** has failed to take action reasonably as requested by us to prevent recurrence of damage to the insured property; or

b.  On the basis of filing of claims for loss caused by sinkhole damage, unless

(1)  The total of such property claim payments equals or exceeds the policy limits in effect on the date of loss for property damage to the covered building(s); or

(2)  You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

c.  On the basis of a single claim on a property insurance policy which is the result of water damage unless we can demonstrate that the **"insured"** failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property; or

d.  On the basis of the lawful use, possession, or ownership of a firearm or ammunition; or

e.  On the basis of credit information available in public records.

The following change applies to the HO–6R only:

Under item **6. Subrogation**, the first paragraph is deleted and replaced by the following:

6.  **Subrogation.** Any **"insured"** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us. However, we waive any rights of recovery against the corporation or association of property owners of the condominium where the **"residence premises"** is located.

Under item **6. Subrogation**, the following is added to the HO–3R and HO–6R.

Subrogation does not apply to **SECTION II - Coverage F - Medical Payments to Others**.

Item **8. Assignment** is deleted and replaced by the following:

7.  **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

**USAA Confidential**

0901119ca00d72d8

CIC      03705 58 48      90A

The following conditions are added:

**Renewal Notification.** If we elect to renew this policy, we will let you know, in writing:

a.  Of our decision to renew this policy; and

b.  The amount of the renewal premium payable to us.

This notice will be delivered to you or mailed to you at your mailing address shown on the Declarations at least 45 days before the expiration date of this policy.

**Notification To Insured Regarding Access**

If we require access to the **"insured"** or claimant or to the insured property that is the subject of a claim, we must provide at least 48 hours notice to the **"insured"** or claimant, your public adjuster or legal representative before scheduling a meeting with the **"insured"** or claimant, or prior to conducting an onsite inspection of the insured property. The **"insured"** or claimant may deny access to the property if the notice has not been provided. The **"insured"** or claimant may waive the 48 hour notice.

Except as specifically modified in this endorsement, all provisions of the policy to which this endorsement is attached also apply to this endorsement.

Copyright, USAA, 2016. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**HO-FL** (08–16)

0901119ca00d72d8

USAA Confidential

CIC    03705 58 48    90A

HO-SLS3FL (05-16)

THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.

## SPECIAL LOSS SETTLEMENT
### Florida
(HO-3R only)

**Coverage D - Loss of Use Protection, 1. Additional Living Expense** is deleted and replaced by the following:

1.  **Additional Living Expense.** If a loss covered under SECTION I – LOSSES WE COVER makes that part of the **"residence premises"** where you reside uninhabitable, we cover the reasonable and necessary increase in living expenses so that your household can maintain its normal standard of living.

    Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere, in either event, not to exceed 24 months.

## TOTAL LOSS - LOSS SETTLEMENT

### Coverage C - Personal Property Protection

In the event that your dwelling is completely destroyed solely by Fire or Windstorm to the extent that it is a **"total loss"** we will pay your claim under the following terms:

Items a., b. and c. of the **Loss Settlement** provision of the REPLACEMENT COST COVERAGE – PERSONAL PROPERTY endorsement is deleted and replaced by the following:

We will pay 75% of the amount of insurance for Coverage C – Personal Property Protection as shown in the Declarations, if this is your primary residence and all of your personal property is located in your dwelling located on the **"residence premises"** at the time of loss.

However, if part of your personal property covered by this endorsement is at another location, or in an undamaged structure on the **"residence premises"** at the time of the loss, payment will be 75% of the Coverage C – Personal Property Protection limit less the covered replacement cost of the personal property not destroyed.

To receive additional payment which exceeds 75% of Coverage C – Personal Property Protection limit, the provisions and terms of the REPLACEMENT COST COVERAGE – PERSONAL PROPERTY endorsement will apply.

In no event will we pay more than the applicable coverage limits stated in the policy or endorsements.

### Liberalization Clause.

The provisions of this endorsement will automatically apply to your insurance as of the date we implement this change in your state.

Unless specifically modified by this endorsement all other provisions of the policy to which this endorsement is attached shall apply.

Copyright, USAA, 2016. All rights reserved.

CATALOG–NUMBER
93691–0916
Page 1 of 1

HO-SLS3FL (05-16)

0901119ca00d72d8

USAA Confidential

CIC      03705 58 48      90A

HO-125FL (09-16)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**HOME PROTECTOR**
**Florida**
(HO-3R only)

For an additional premium, the following is added to SECTION I – CONDITIONS, 3. Loss Settlement:

c. **Home Protector Coverage**

You agree:

(1) To insure your buildings, under Property We Cover – Dwelling Protection and Other Structures Protection, on the **"residence premises"** for the full replacement cost at the time this policy is issued; and

(2) To accept any increase in coverage that results from the application of the Adjustment to Building Cost provision, if it is deemed necessary by us. You must pay for any added premium; and

(3) To tell us within 90 days of the start of any additions or other physical changes to buildings on the **"residence premises"** which increases the value by the greater of:

(a) $25,000; or

(b) 5% of the current Dwelling Protection amount of insurance.

You must pay any resulting premium.

If you comply with these requirements and if as a result of a covered loss, you have exhausted the amount of insurance:

(1) Applying to buildings covered under Property We Cover – Dwelling Protection or Other Structures Protection; or

(2) Provided under ADDITIONAL COVERAGES, Debris Removal: or

then, we will pay up to an additional 25% of the amount of insurance applying to the damaged building. The most we will pay for (1), or (2), either singly or in any combination is 25% or the amount actually and necessarily spent to repair or replace the damaged building, whichever is less.

Except as specifically modified in this endorsement, all provisions of the policy to which this endorsement is attached also apply to this endorsement.

**Term Premium**    INCLUDED

Copyright, USAA, 2016. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CATALOG-NUMBER
93683-0916
Page 1 of 1

HO-125FL (09-16)

USAA Confidential

CIC     03705 58 48     90A

**HO-208FL (12−15)**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### WATER BACKUP OR SUMP PUMP OVERFLOW
### FLORIDA

**SECTION I**

This endorsement applies to **PROPERTY WE COVER - Dwelling Protection, Other Structures Protection, Personal Property Protection** and **Loss of Use Protection**.

The following ADDITIONAL COVERAGE is added:

We insure for direct, physical loss caused by:

1. Water or water−borne material which flows into the plumbing system of your dwelling or other structures through sewers or drains located off the **"residence premises"**; or

2. Water which overflows from a sump pump or sump well with a sump pump designed to drain subsurface water from the foundation area even if such overflow results from the mechanical breakdown of the sump pump or a disruption in power. This coverage does not apply to direct physical loss of the sump pump, or related equipment, which is caused by mechanical breakdown.

This coverage does not apply to loss caused directly or indirectly by any of the following, regardless of whether any other causes or events act concurrently or in any sequence with the excluded event to produce the loss:

1. A general condition of flooding meaning a temporary condition of complete inundation of:

   a. two or more acres of normally dry land area; or

   b. two or more properties

   that includes the inundation of the part of the **"residence premises"** where the **"insured's"** dwelling is located from:

   a. Overflow of inland or tidal waters.

   b. Unusual and rapid accumulation or runoff of surface waters from any source; or

   c. Mudflow

   This exclusion applies even if there is a mechanical breakdown or a disruption of power; or

2. the negligence of any **"insured"**.

**AMOUNT OF INSURANCE**

$10,000 is the most we will pay for any one loss whether resulting from a single condition or series of related conditions.

**SECTION I - LOSSES WE DO NOT COVER**

For loss covered by this endorsement, if your policy is the:

HO−3R:

LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND OTHER STRUCTURES PROTECTION, item **1.g.** is deleted and replaced by the following:

g. latent defect, inherent vice, or any quality of the property that causes it to damage or destroy itself;

HO−6R:

If your policy includes the **Unit-Owners Coverage A - Special Dwelling Protection** endorsement, LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, item **1.g.** is deleted and replaced by the following:

**HO-208FL** (12−15)

CATALOG−NUMBER
131352−0916
Page 1 of 2

**USAA Confidential**

CIC    03705 58 48    90A

g.  latent defect, inherent vice, or any quality of the property that causes it to damage or destroy itself;

If the policy includes the **Special Personal Property Coverage** endorsement, under LOSSES WE DO NOT COVER, item **r.** is deleted and replaced by the following:

r.  latent defect, inherent vice, or any quality of the property that causes it to damage or destroy itself;

Except to the extent of additional coverage provided by the terms of this endorsement **Water Damage** is excluded as provided in HO−3R:

LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION **1.c. Water Damage**.

Exclusion **1.d. Power Failure** is deleted and replaced by the following:

d.  **Power Failure**, meaning the failure of power or other utility service if the failure takes place off the residence premises except as provided in ADDITIONAL COVERAGES, Refrigerated Products and Water Backup or Sump Pump Overflow.

Except to the extent of additional coverage provided by this endorsement, **Water Damage** is excluded as provided in HO−6R:

LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND PERSONAL PROPERTY PROTECTION **1.c. Water Damage**.

Exclusion **1.d. Power Failure** is deleted and replaced by the following:

d.  **Power Failure**, meaning the failure of power or other utility service if the failure takes place off the residence premises except as provided in ADDITIONAL COVERAGES, Refrigerated Products and Water Backup or Sump Pump Overflow.

Except as specifically modified in this endorsement, all provisions of the policy to which this endorsement is attached also apply to this endorsement.

**Term Premium**    NO CHARGE

Copyright, USAA, 2015. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**HO-208FL** (12−15)    Page 2 of 2

0901119ca00d72d8

USAA Confidential

CIC     03705 58 48      90A

HO-225FL (12-15)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BUILDING ORDINANCE OR LAW COVERAGE
### Florida

For an additional premium, for loss caused by a loss under SECTION I – LOSSES WE COVER to buildings under Coverage A – Dwelling Protection or Coverage B – Other Structures Protection, we will pay the increased costs which are required and you actually incur to comply with any ordinance or law governing the rebuilding, repair or demolition of the damaged property, including the cost of removing debris.

If, as a result of a covered loss, the amount of insurance under Additional Coverages, Building Ordinance or Law is exhausted; then we will pay up to an additional 25% of the Coverage A – Dwelling amount of insurance.

This coverage is additional insurance.

The policy deductible applies.

Except as specifically modified in this endorsement, all provisions of the policy to which this endorsement is attached also apply to this endorsement.

**Term Premium**     INCLUDED

Copyright, USAA, 2015. All rights reserved.

CATALOG–NUMBER
93685–0916
Page 1 of 1

HO-225FL (12-15)

0901119ca00d72d8

USAA Confidential

CIC     03705 58 48     90A

HO-728FL (05-16)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## REPLACEMENT COST COVERAGE - PERSONAL PROPERTY
### Florida

We will settle losses to covered property at full replacement cost without deduction for depreciation, subject to the following:

### REPLACEMENT COST COVERAGE DEFINED

Replacement Cost means the cost, at the time of loss, of a new item identical to the one damaged, destroyed or stolen. If an identical item is no longer manufactured or cannot be obtained, replacement cost will be the cost of a new item which is:

a.  Similar to the insured article; and

b.  Of like quality and usefulness.

### DEDUCTIBLE

The deductible shown in the Declarations Page applies.

### PROPERTY COVERED

a.  Personal property covered in Property We Cover – Personal Property Protection, except personal property stated in Property Not Eligible below;

b.  If covered in this policy; awnings, carpeting, and household appliances, whether or not attached to buildings.

### PROPERTY NOT ELIGIBLE

Replacement cost coverage does not apply to:

a.  Items of rarity or antiquity that cannot be replaced;

b.  Articles whose age or history contributes substantially to their value. These include, but are not limited to, memorabilia, souvenirs and collectors' items;

c.  Motorized golf carts and their equipment and accessories;

d.  Articles not maintained in good or workable condition;

e.  Property that is either obsolete or useless to the insured at the time of loss;

f.  Property that you do not intend to repair, replace, or restore.

### LOSS SETTLEMENT

SECTION I – CONDITIONS, Item **3.a. Loss Settlement** does not apply to property covered by this endorsement. Instead the following loss settlement applies:

a.  For property that is eligible for replacement cost coverage we will pay no more than the lesser of:

(1)  The cost to replace the property with new property of like kind and quality without deduction for depreciation, or

(2)  Pay you the full cost to repair or restore the property to the condition it was in just before the loss.

b.  For property that is not eligible for replacement cost coverage, it is our option to pay you the lesser of:

(1)  The **"actual cash value"**; or

(2)  Replace, or to pay you our cost to replace the property with property of like kind, age, quality and condition; or

(3)  Pay you the cost to repair or restore the property to the condition it was in just before the loss.

CATALOG-NUMBER
93687-0916__02
Page 1 of 2

HO-728FL (05-16)

USAA Confidential

0901119ca00d72d8

CIC     03705 58 48      90A

c.  We will not pay more than the Amount of Insurance that applies to Personal Property Protection. Nor will we pay more than any Special Amounts of Insurance that apply as stated in the policy to which this endorsement is attached.

d.  When insured for replacement cost, we will make payment whether or not actual repair or replacement is complete.

Except as specifically modified in this endorsement, all provisions of the policy to which this endorsement is attached also apply to this endorsement.

**Term Premium**      NO CHARGE

Copyright, USAA, 2016. All rights reserved.

**HO-728FL** (05–16)                                                          Page 2 of 2

0901119ca00d72d8

USAA Confidential

CIC    03705 58 48      90A

**HO-94FL (09−16)**

THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.

### WINDSTORM OR HAIL EXCLUSION
### Florida

1.  We do not insure for loss under COVERAGE A − Dwelling Protection, COVERAGE B − Other Structures Protection, COVERAGE C − Personal Property Protection or COVERAGE D − Loss of Use Protection, or ADDITIONAL COVERAGES caused by or resulting from the peril of windstorm or hail.

2.  With respect to **1** above, we also do not insure for loss to:

    a.  **"Watercraft"** or **"personal watercraft"** of all types and their trailers, furnishings, equipment, and outboard engines or motors, if they are inside a fully enclosed building, or

    b.  The inside of an otherwise covered building or otherwise covered property contained in a building caused by:

    (1) Rain;
    (2) Snow;
    (3) Sleet;
    (4) Hail;
    (5) Sand; or
    (6) Dust;

    if the direct force of the windstorm or hail first damages the building, causing an opening through which the rain, snow, sleet, hail, sand or dust enters and causes damage.

Direct loss by fire or explosion resulting from windstorm or hail is covered.

Except as specifically modified in this endorsement, all provisions of the policy to which this endorsement is attached also apply to this endorsement.

**Total Policy Credit** $12,232.35

Copyright, USAA, 2016. All rights reserved.

CATALOG−NUMBER
93717−0916
Page 1 of 1

**HO-94FL (09−16)**

0901119ca00d72d8

USAA Confidential

CIC    03705 58 48    90A

## FLORIDA COVERAGE OPTIONS

Florida law allows you to remove certain coverage from your policy.

Explanations can be found below. Before you decide to remove coverage from your policy, we suggest you call us at 1–800–531–USAA (8722) to discuss it. USAA does not recommend that you remove these coverages.

**Windstorm and Hail Coverage**
You can remove coverage for windstorm, hail, hurricane and tropical storm from your USAA policy. USAA has elected to treat windstorm and hail as a combined peril. If you elect to exclude windstorm coverage, you will also be electing to exclude hail coverage.

If you elect to remove this coverage, Florida requires we send you a request form to submit a handwritten statement that reads:

"I do not want the insurance on my (home/condominium unit) to pay for damage from windstorms or hurricanes. I will pay those costs. My insurance will not."

The request form must be signed and dated by all named insureds listed on the policy. If you want us to send you a request form, call 1–800–531–USAA (8722). If your property is financed, you must also include a letter from your mortgage company giving its permission to remove the coverage from your policy. Once the letters are received, we'll process the change as requested. This coverage can only be added or removed within 30 days after policy issuance or when your policy renews.

**Contents Coverage**
You can remove coverage for your contents from your policy. This option is not available for condominium units.

If you elect to remove this coverage, Florida requires we send you a request form to submit a handwritten statement that reads:

"I do not want the insurance on my home to pay for the costs to repair or replace any contents that are damaged. I will pay those costs. My insurance will not."

The request form must be signed and dated by all named insureds listed on the policy. Once this letter is received, we'll process the change as requested. This coverage can only be added or removed within 30 days after policy issuance or when your policy renews. If you want us to send you a request form, call 1–800–531–USAA (8722).

**Sinkhole Coverage**
You can reject Sinkhole Loss Coverage and carry only Catastrophic Ground Cover Collapse (CGCC) Coverage. Read "Sinkhole Coverage" (form FLSNKREJ) for descriptions of both coverage options. If you elect to reject Sinkhole Loss Coverage, your request must be in writing for changes to apply.

0901119ca00d72d8

USAA Confidential

CIC    03705 58 48    90A

## CHECKLIST OF COVERAGE
### Policy Type: Homeowner

The following checklist is for informational purposes only. Florida law prohibits this checklist from changing any of the provisions of the insurance contract which is the subject of this checklist. Any endorsement regarding changes in types of coverage, exclusions, limitations, reductions, deductibles, coinsurance, renewal provisions, cancellation provisions, surcharges, or credits will be sent separately.

Reviewing this checklist together with your policy can help you gain a better understanding of your policy's actual coverages and limitations, and may even generate questions. By addressing any questions now, you will be more prepared later in the event of a claim. Experience has shown that many questions tend to arise regarding the coverage of attached or detached screened pool enclosures, screened porches, and other types of enclosures. Likewise, if your policy insures a condominium unit, questions may arise regarding the coverage of certain items, such as individual heating and air conditioning units; individual water heaters; floor, wall, and ceiling coverings; built-in cabinets and counter tops; appliances; window treatments and hardware; and electrical fixtures. A clear understanding of your policy's coverages and limitations will reduce confusion that may arise during claims settlement.

Please refer to the policy for details and any exceptions to the coverages listed in this checklist. All coverages are subject to the provisions and conditions of the policy and any endorsements. If you have questions regarding your policy, please contact your agent or company. Consumer assistance is available from the Department of Financial Services, Division of Consumer Services' Helpline at (800) 342-2762 or www.fldfs.com.

This form was adopted by the Florida Financial Services Commission.

| Dwelling Structure Coverage | |
|---|---|
| Limit of Insurance:    $255,000 | Loss Settlement Basis:  Replacement Cost |

| Other Structures Coverage | |
|---|---|
| Limit of Insurance:    $25,500 | Loss Settlement Basis:  See Note Below |

| Personal Property Coverage | |
|---|---|
| Limit of Insurance:    $127,500 | Loss Settlement Basis: Replacement Cost |

| Deductibles | |
|---|---|
| NOT COVERED<br>Annual Hurricane: IN THIS POLICY | All Perils (Other Than Hurricane):    $1,000 |

Note: Other Structures that are buildings are settled at Replacement Cost, and other structures that are not buildings are settled at Actual Cash Value.

0901119ca00d72d8

USAA Confidential

CIC     03705 58 48     90A

The Limit of Insurance, Deductibles, and Loss Settlement Basis on page 1 apply to the following perils insured against:

(Items below marked **Y (YES)** indicate coverage IS included, those marked **N (NO)** indicate coverage is NOT included)

| | |
|---|---|
| N | Hurricane |
| N | Windstorm or Hail (other than hurricane) |
| Y | Fire or Lightning |
| Y | Explosion |
| Y | Riot or Civil Commotion |
| Y | Aircraft |
| Y | Vehicles |
| Y | Smoke |
| Y | Vandalism or Malicious Mischief |
| Y | Theft |
| Y | Falling Objects |
| Y | Weight of Ice, Snow or Sleet |
| Y | Accidental Discharge or Overflow of Water or Steam |
| Y | Sudden and Accidental Tearing Apart, Cracking, Burning, or Bulging |
| Y | Freezing |
| Y | Sudden and Accidental Damage from Artificially Generated Electrical Current |
| Y | Volcanic Eruption |
| N | Sinkhole Loss |
| Y | Any Other Peril Not Specifically Excluded (dwelling and other structures only) |
| N | Flood (including loss caused by hurricane) |

**Special limits and loss settlement exceptions may apply to certain items. Refer to your policy for details.**

| Loss of Use Coverage | | |
|---|---|---|
| Coverage | Limit of Insurance | Time Limit |
| (Items below marked **Y (YES)** indicate coverage IS included, those marked **N (NO)** indicate coverage is NOT included) | Total for the following coverages is listed below. | |
| Y   Additional Living Expense | | Up to 24 Months |
| Y   Fair Rental Value | $51,000 | Up to 24 Months |
| Y   Civil Authority Prohibits Use | | Up to 2 Weeks |

OIR-B1-1670
**FLHO3CHK(03)** Rev. 04-10

0901119ca00d72d8

USAA Confidential

| Property - Additional/Other Coverages | | | |
|---|---|---|---|
| You may have purchased additional coverage limits that are not shown here. | | | |
| (Items below marked **Y (YES)** indicate coverage IS included, those marked **N (NO)** indicate coverage is not included) | Limit of Insurance | Amount of insurance is an additional Amount of Coverage or is included with the policy limit. | |
| | Provided in Contract | Included | Additional |
| Y | Debris Removal | 5% of Applicable Policy Limits | | X |
| Y | Reasonable Repairs | Up to Applicable Policy Limits | X | |
| Y | Property Removed | Up to Applicable Policy Limits | X | |
| Y | Credit Card, Electronic Fund Transfer Card, or Access Device, Forgery and Counterfeit Money | $5,000 | | X |
| Y | Loss Assessment | $10,000 | | X |
| Y | Collapse | Up to Applicable Policy Limits | X | |
| Y | Glass or Safety Glazing Material | Up to Applicable Policy Limits | X | |
| Y | Landlord's Furnishings | $2,500 | X | |
| Y | Law and Ordinance | 5% of Applicable Dwelling Limits | | X |
| Y | Grave Markers | Up to Applicable Policy Limits | X | |
| Y | Mold | $10,000 | | X |

| Discounts | |
|---|---|
| (Items below marked **Y (YES)** indicate discount IS applied, those marked **N (NO)** indicated discount is NOT applied) | Discount Amount |
| Y Multiple Policy (Auto/Homeowners Combination) | $52.24 |
| Y Fire Alarm / Smoke Alarm / Burglar Alarm | $17.96 |
| N Sprinkler | |
| N Windstorm Loss Reduction (FBC) | |
| N Building Code Effectiveness Grading Schedule | |
| N New Home (Home Age) | |
| Y Claim Free | $284.41 |

OIR-B1-1670
**FLHO3CHK(03)** Rev. 04-10

Page 3 of 4

0901119ca00d72d8

USAA Confidential

CIC    03705 58 48    90A

| Other Coverage Options | |
|---|---|
| (Items below marked **Y (YES)** indicate coverage IS included, those marked **N (NO)** indicate coverage is NOT included) | Limit of Insurance |
| Y | Home Protector | Up to 25% of Dwelling Limits |

| Personal Liability Coverage |
|---|
| Limit of Insurance:      $300,000 |
| **Medical Payments to Others Coverage** |
| Limit of Insurance:      $5,000 |

| Liability - Additional/Other Coverages | | | |
|---|---|---|---|
| (Items below marked **Y (YES)** indicate coverage IS included, those marked **N (NO)** indicate coverage is NOT included) | Limit of Insurance | Amount of Insurance is an additional amount of coverage or is included within the policy limit. | |
| | | Included | Additional |
| Y | Claim Expenses | $300,000 | | X |
| Y | First Aid Expenses | $5,000 | | X |
| Y | Damage to Property of Others | $ 1,000 | | X |
| Y | Loss Assessment | $ 10,000 | | X |

OIR-B1-1670
**FLHO3CHK(03)** Rev. 04-10

0901119ca00d72d8

USAA Confidential

CIC    03705 58 48    90A

**USAA®**

## SINKHOLE LOSS COVERAGE REJECTION

All policies include coverage for Catastrophic Ground Cover Collapse. Subject to USAA's approved underwriting guidelines you may also purchase coverage for Sinkhole Loss. Below is a description of both coverages.

### Coverage Options

| Coverage | Covers | Deductible |
|---|---|---|
| Sinkhole Loss | Structural damage to the covered building, including the foundation, caused by settlement or systematic weakening of the earth supporting the covered building, but only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation. If there is structural damage to the covered building, contents and additional living expenses coverage apply if there is coverage for damage to the covered building. | A 10% deductible applies to this coverage. |
| Catastrophic Ground Cover Collapse | Structural damage to the covered building, including the foundation, if geological activity results in the following: (1) abrupt collapse of the ground cover; (2) a depression in the ground cover clearly visible to the naked eye; and (3) condemnation of the insured structure or an order to vacate the structure by a governmental agency authorized by law to issue such an order for that structure. If there is structural damage to the covered building, contents coverage applies if there has been loss resulting from a catastrophic ground cover collapse. | The All Other Perils deductible on the policy. |

New policies are issued with Catastrophic Ground Cover Collapse unless you selected Sinkhole Loss coverage at the time of issue.

Please refer to page two of your policy Declarations to determine which coverage is provided under your policy. If your policy already includes coverage for Sinkhole Loss you have the option to reject this coverage and carry only Catastrophic Ground Cover Collapse. **This will result in a reduction in premium and a reduction in coverage.** To select Catastrophic Ground Cover Collapse only, complete the information below and return this form to us. Important: Your request must be in writing for the change to apply. You may purchase Sinkhole Loss coverage in the future, subject to underwriting guidelines.

If you have any questions, please call a USAA member service representative at **1-800-531-USAA (8722).**

CATALOG—NUMBER
67435—0916
Page 1 of 2

**FLSNKREJ(03)** Rev. 12—15

0901119ca00d72d8

USAA Confidential

CIC    03705 58 48       90A

## REJECTION NOTICE

This rejection will apply for the duration of this policy and to all policy renewals that follow. This includes any reinstated or reissued policy for the property below that USAA or an affiliated company covers without interruption.

☐  I want Catastrophic Ground Cover Collapse Coverage only.*

*Choosing this coverage constitutes rejection of Sinkhole Loss Coverage.

USAA#:          03705 58 48                    POLICY #: 90A

Property Address:   2400 TEQUESTA LN

                    MIAMI, MIAMI-DADE, FL  33133-3176

Signature _____      Date _____

Mail the completed notice to:   USAA

                                9800 Fredericksburg Road

                                San Antonio, TX 78288-0001

Or, fax it to:                  (800) 531-8877

**If this form is sent by fax, the sender authorizes the document received by USAA as a duplicate original and the signature produced by the receiving fax machine as the sender's original signature.**

**FLSNKREJ(03)** Rev. 12-15                                      Page 2 of 2

USAA Confidential

## Outline of Your Homeowners Policy

THE FOLLOWING OUTLINE OF COVERAGE IS FOR INFORMATIONAL PURPOSES ONLY. IT IS THE EXPRESS INTENT OF S. 627.4143, FLORIDA LAW PROHIBITS THIS OUTLINE FROM CHANGING ANY OF THE PROVISIONS OF THE INSURANCE CONTRACT WHICH IS THE SUBJECT OF THIS OUTLINE. ANY ENDORSEMENTS REGARDING CHANGES IN TYPES OF COVERAGE, EXCLUSIONS, LIMITATIONS, REDUCTIONS, DEDUCTIBLES, COINSURANCE, RENEWAL PROVISIONS, CANCELLATION PROVISIONS, SURCHARGES OR CREDITS WILL BE SENT SEPARATELY.

THE INFORMATION IN THIS FORM BRIEFLY OUTLINES THE MAJOR COVERAGES, EXCLUSIONS, NON-RENEWAL AND CANCELLATION PROVISIONS. YOU SHOULD READ YOUR POLICY FOR COMPLETE DETAILS ON THE COVERAGE. THE COVERAGES AND LIMITS YOU HAVE PURCHASED AND THE PREMIUMS CHARGED ARE LISTED ON THE DECLARATIONS PAGE. IN THE EVENT OF ANY CONFLICT BETWEEN THE POLICY AND THIS OUTLINE, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

### Property coverages

**A.** Covers your dwelling, including structures attached. Coverage A applies to real property owned by you.

**B.** Covers private, non-business structures at your residence, detached from the dwelling, such as a garage, fence, swimming pool or guest house.

**C.** Covers your personal property such as clothes and furniture. Certain special limits apply such as $200 to money and $10,000 for theft of jewelry. You should review these in Section I of your policy along with the kinds of property which are not covered, such as motorized vehicles and property of roomers or boarders.

**D.** Additional Living Expense provides for payments to you if you temporarily cannot continue to live in your residence because of a covered loss to your dwelling.

### Additional coverages

Debris Removal; Cost of Reasonable Repairs; Coverage for certain losses to trees, plants and shrubs; Fire Department Service Charge; Coverage for Property Removed due to a covered loss; Credit Card and Identity Fraud Expense; Loss Assessment; Collapse; Lock Replacement; Refrigerated Products, Land, Landlord's Furnishings, Building Ordinance or Law; and Temporary Living Expense, Fungus, or Wet or Dry Rot, Military Uniforms and Equipment, War, and Electronic Media.

### Covered Losses

**Form HO-3 - Special Form.** Covers dwelling, other structures, and loss of use against all risks of physical loss, with certain exceptions.

Personal property is covered for named perils, some of which are: Fire or Lightning, or Explosion, Riot, Aircraft, Vehicles, Smoke, Vandalism and Theft.

**Form HO-6 - Unit-Owners form.** Covers personal property, unit owners building items, and loss of use against loss by the same perils as provided under the HO-3 for personal property.

0901119ca00d72d8

**USAA Confidential**

## Property losses we do not cover

The principal exclusions in your property coverage are briefly referred to here: Loss from earth movement (other than Catastrophic Ground Cover Collapse), water damage from flood and other surface or wind-driven waters, power failure, neglect, war and nuclear hazards.

## Deductible

If the property is eligible for windstorm, hurricane and hail coverage, Florida policies contain a separate deductible for hurricane losses, which may result in high out-of-pocket expenses for you. The hurricane deductible applies only once for all hurricane-related losses that occurs for a single policy during a calendar year (January 1 through December 31).

If the property excludes coverage for windstorm, hurricane, and hail, then coverage is available through the Citizens Property Insurance Corporation (Citizens).

## Personal liability coverages

Section II of your policy covers you for your legal liability for bodily injury or property damage to others, arising out of your residence or the personal activities of you and your family members away from the residence. Coverage does not apply to liability resulting from your business pursuits, motor vehicles, or certain kinds of watercraft.

## Coverage modifications

The Homeowners Program is very flexible, providing numerous ways to accommodate any special needs you may have. Some of the more common optional coverages include:

**Home Protector** – this endorsement provides coverage for increased costs of construction and debris removal.

**Building ordinance or law** – this endorsement pays for the increased costs you have to pay to repair or replace damaged buildings in accordance with ordinances or laws that regulate construction, repair, or demolition.

## Renewal and cancellation provisions

You may cancel the policy at any time for any reason. Our rights to cancel or nonrenew your policy is limited to those conditions described in your policy. If we intend to cancel or refuse renewal of your policy, we must send you a notice telling the reasons for our action and give you advance notice of the cancellation and nonrenewal date.

## Premium credits

There are various premium credits available which may help to reduce your premium. The following is a brief list of credits for which you may qualify:

- Monitored Fire Alarm/Burglar Alarm
- Florida Building Code Credit
- Florida Building Code Effectiveness Grading Schedule
- Automobile/Homeowners Combination
- Age of Home
- Claims Free

**15220(03)** Rev. 04-10                                                                 Page 2 of 2

USAA Confidential



9800 Fredericksburg Road
San Antonio, Texas 78288

## BUILDING ORDINANCE OR LAW COVERAGE OPTIONS

If you don't want to make changes, there is no need to return this notice. If you decide to make a change, please sign the attached selection/rejection notice and return it to us. For an additional premium, the coverage can be increased or added to your policy. If you decide not to continue this coverage, sign the attached selection/rejection notice and return it to us.

Regardless of whether you have Building Ordinance or Law coverage or not, state law requires that we periodically give you the opportunity to add, increase, or reject the coverage. A brief description appears below for your reference.

**Important: rejection must be in writing for changes to apply to this coverage.**

### DESCRIPTION OF BUILDING ORDINANCE OR LAW COVERAGE

Building Ordinance or Law coverage pays for the increased costs you incur to repair or replace damaged buildings in accordance with ordinances or laws that regulate construction, repair or demolition. The available Building Ordinance or Law endorsement provides either 25 percent or 50 percent of the stated dwelling amount for the increase in construction cost due to Building Ordinance or Law compliance. A new policy will have a 25% limit unless you make a different selection below.

This additional coverage provides protection when in the course of repairing damage from a covered loss, you are required to upgrade or retrofit the damaged building to comply with codes or ordinances enacted between the time the building was originally constructed and the date construction begins. Coverage is also provided when laws or ordinances require the demolition of damaged buildings, including undamaged portions, prior to rebuilding.

### SELECTION/REJECTION NOTICE

Florida law requires that we obtain your signature if you want to change your Building Ordinance or Law coverage limit, or if you want to reject the additional coverage entirely. Please indicate your choice and complete this selection/rejection notice, sign and date below, and return it to us.

☐ I want Building Ordinance or Law coverage of 50 percent.*
☐ I want Building Ordinance or Law coverage of 25 percent.*
☐ I want to reject both the 25 percent and 50 percent additional Building Ordinance or Law coverage limits entirely.

* Choosing this percentage limit constitutes rejection of the other percentage limit available.

Signature _____   Date _____

**If this form is sent by facsimile machine (fax), the sender adopts the document received by USAA as a duplicate original and adopts the signature produced by the receiving fax machine as the sender's original signature.**

Policy Number _____   Property Address _____

Mail the completed notice to:

    USAA PROPERTY
    USAA
    9800 Fredericksburg Road
    San Antonio, Texas 78288-0001

CATALOG-NUMBER
23939-0916
Page 1 of 2

**23939(04)** Rev. 02-16

PS.037055848.23939.90A



USAA Confidential

THIS PAGE INTENTIONALLY LEFT BLANK

**23939(04)** Rev. 02−16
PS.037055848.23939.90A



USAA Confidential

0901119ca00d72d8

## Your Home Characteristics

Our mission at USAA is to help protect your financial security. One way we do this is by helping you determine if you're adequately covered in the event of a loss. We can calculate the minimum rebuilding cost of your home based on your home characteristics, but only you can decide if this is enough coverage. Our estimates are based on average construction costs and labor costs for geographic areas and may not reflect the unique features of your home or the area you live in.

On the back of this page, you'll find your home characteristics. If any of the information is incorrect, the rebuilding cost may be affected, so please revise any inaccuracies by:

* Logging on to usaa.com, selecting your policy and then Home Characteristics, or
* Calling us at 210−531−USAA (8722), our mobile shortcut #8722 or 800−531−8722.

**Should I adjust the coverage on my flood or wind policy?**
* If you have a separate flood or wind policy for this property, please call your agent or insurer to confirm that your coverage is adequate. For flood or wind policies serviced by the USAA Insurance Agency, please call us at the numbers listed above. Wind coverage is available in Alabama, Florida, North Carolina, South Carolina, Texas and Mississippi.

0901119ca00d72d8

USAA Confidential

CIC    03705 58 48    90A

## Your Home Characteristics

YEAR BUILT: 1959
*TOTAL SQUARE FOOTAGE: 1290
NUMBER OF STORIES: 1.0

*Total Square Footage:

Includes: Additions and Finished Attic Space

Excludes: Basements and Built-in or Attached Garages

GENERAL SHAPE AND STYLE: STANDARD
EXTERIOR FINISHES & FEATURES: STANDARD
INTERIOR FINISHES & FEATURES: ABOVE AVERAGE
KITCHENS AND BATHS: ABOVE AVERAGE
EXTERIOR WALL CONSTRUCTION: STUCCO OVER BLOCK
FOUNDATION TYPE: CONCRETE SLAB
ROOF TYPE: COMPOSITION – ARCHITECTURAL SHINGLE
YEAR ROOF INSTALLED/REPLACED: 2014
GARAGE OR CARPORT TYPE/STYLE: ATTACHED/BUILT-IN – 1.5 CAR
FLOOR COVERING MATERIALS: TILE – CERAMIC, LAMINATE,
HARDWOOD – PLANK
NUMBER OF BATHROOMS: 3 QUARTER 1, FULL 1
FIREPLACES: NONE

**60321(04)** Rev. 10-15

0901119ca00d72d8

USAA Confidential



USAA
9800 Fredericksburg Road
San Antonio, Texas 78288

# SPECIAL FORM – HOMEOWNERS POLICY.

### **READ YOUR POLICY CAREFULLY**

This policy is a legal contract between you, the policyholder, and us, the insurer. And like other contracts, it contains certain duties and responsibilities of both parties to the contract. This contract consists of the Declarations page, the policy, and any applicable endorsements.

**Your policy provides the coverages and amounts of insurance shown in the Declarations with a premium.**

This cover sheet provides only a brief outline of some of the important features of your policy. This is not the insurance contract and only the actual policy provisions will control. The policy itself sets forth, in detail, the rights and obligations of both you and your insurance company.

**IT IS THEREFORE IMPORTANT THAT YOU READ YOUR POLICY.**

## QUICK REFERENCE

|  | Page |
| --- | --- |
| **AGREEMENT** | 1 |
| **DEFINITIONS** | 1 |
| **DEDUCTIBLE** | 3 |
| **SECTION I** | |
| **PROPERTY WE COVER** | 3 |
| Dwelling Protection | |
| Other Structures Protection | |
| Personal Property Protection | |
| Special Amounts | |
| Property We Do Not Cover | |
| Loss of Use Protection | |
| **ADDITIONAL COVERAGES** | 7 |
| Debris Removal | |
| Reasonable Repairs | |
| Trees, Shrubs, Plants | |
| Fire Department Charge | |
| Property Removed | |
| Credit Card and Identity Fraud | |
| Loss Assessment | |
| Collapse | |
| Lock Replacement | |
| Refrigerated Products | |
| Land | |
| Glass or Safety Glazing | |
| Landlord's Furnishings | |
| Building Ordinance or Law | |

|  | Page |
| --- | --- |
| Temporary Living Expense | |
| Fungus, or Wet or Dry Rot | |
| Military Uniforms | |
| War | |
| Electronic Media | |
| **LOSSES WE COVER** | 13 |
| Dwelling and Other Structures | |
| Personal Property | |
| **LOSSES WE DO NOT COVER** | 15 |
| **CONDITIONS** | 18 |
| **SECTION II** | |
| **LIABILITY COVERAGES** | 23 |
| Personal Liability | |
| Medical Payments | |
| **EXCLUSIONS** | 24 |
| **ADDITIONAL COVERAGES** | 28 |
| Claims Expenses | |
| First Aid Expenses | |
| Damage to Property of Others | |
| Loss Assessment | |
| **CONDITIONS** | 29 |
| **SECTIONS I and II** | |
| **CONDITIONS** | 31 |

This policy is issued by USAA Casualty Insurance Company ("USAA CIC"). This is a participating policy. You are entitled to dividends as may be declared by the USAA CIC Board of Directors.

USAA Confidential

0901119ca00d72d8